MACENAS v VILLAGE OF MICHIANA

Docket No. 81601. Argued October 5, 1988 (Calendar No. 8). Decided
    September 20, 1989.

Joseph Macenas sought review in the Berrien Circuit Court of a
    decision of the village council of the Village of Michiana, acting
    as a zoning board of appeals, denying him a permit to build on
    a parcel of land within the village. The court, Ronald J. Taylor,
    J., granted summary disposition for the village for failure of
    the plaintiff to state a claim on which relief could be granted.
    The Court of Appeals, HOLBROOK, JR., P.J., and SHEPHERD and
    M. E. DODGE, JJ., reversed and granted summary disposition for
    the plaintiff (Docket No. 87369). The village appeals.

In an opinion by Justice GRIFFIN, joined by Chief Justice
    RILEY and Justices LEVIN, BRICKLEY, CAVANAGH, and BOYLE,
    the Supreme Court *held:*

Because the ordinance in question is ambiguous, and because
    no practical or common construction of the disputed ordinance
    requirement consistently was made over an extended period of
    time by the officer or agency charged with administration of
    the ordinance, the board's decision must be overturned. How-
    ever, because the village advanced additional reasons for denial
    of the permit, reversal of the grant of summary disposition for
    the plaintiff and remand of the case is required for further
    proceedings.

1. Where facts relating to a particular use of land are not in
    dispute, the legal effect of those facts, i.e., how the terms of a
    zoning ordinance are to be interpreted in relation to those
    facts, is a matter of law, and courts are not bound by the
    decisions of zoning boards of appeals. Under the zoning en-
    abling act, courts are to defer to determinations of fact made by
    a zoning board of appeals if supported by competent, material,
    and substantial evidence on the record. The board's decisions
    made on the basis of such determinations of fact are to be given
    deference, provided they are procedurally proper and are a
    reasonable exercise of the board's discretion. Such deference,

REFERENCES
Am Jur 2d, Zoning and Planning §§ 66-68.
See the Index to Annotations under Zoning.

however, does not undercut the authority of the court to decide questions of law that may arise in the course of a review of actions by the board or to negate actions that are so unreasonable as to be unconstitutional. Where a question of law is the construction of an ambiguous zoning ordinance, a court is not free to substitute its judgment by imposing what it considers to be the wisest version of the ordinance. Rather, it is confined to analyzing the text of the ordinance and, in the face of ambiguity, determining what the legislative body that enacted the ordinance intended by the language in question. Where a construction has been applied over an extended period by the officer or agency charged with the administration of an ordinance, that construction should be accorded great weight in determining the meaning of the ordinance.

2. In this case, the denial of the building permit was based on the zoning ordinance requirement that a buildable lot have a minimum width of fifty feet at the "front setback line," a term undefined in the ordinance. Examination of the ordinance as a whole requires the conclusion that the ordinance is ambiguous and that the village's interpretation is unreasonable. The village did not establish by competent, material, and substantial evidence that a longstanding practical or common interpretation consistent with its claim existed in fact, and no practical or common construction consistently was given to the phrase "front setback line" over an extended period of time by the officer or agency charged with administration of the ordinance. After according respectful consideration to the construction given the ordinance by the board, it must be concluded that there are cogent reasons for overturning the board's decision.

3. Because the village advanced as additional reasons for its denial of the permit the plaintiff's alleged failure to meet the requirement of another ordinance provision relating to soil support, and plaintiff's alleged failure to obtain a permit pursuant to the Soil Erosion and Sedimentation Control Act, and because it is unclear from the record whether plaintiff is required to meet these conditions and, if so, whether he has complied with them, the case must be remanded to the circuit court for further proceedings.

Justice ARCHER concurred in the result only.

Affirmed in part, reversed in part, and remanded.

160 Mich App 72; 407 NW2d 634 (1987) affirmed in part and reversed in part.

ZONING — AMBIGUOUS ORDINANCES — JUDICIAL REVIEW.

Where a question of law is the construction of an ambiguous

zoning ordinance, a court is not free to substitute its judgment by imposing what it considers to be the wisest version of the ordinance; rather, it is confined to analyzing the text of the ordinance and, in the face of ambiguity, determining what the legislative body that enacted the ordinance intended by the language in question; where a construction has been applied over an extended period by the officer or agency charged with the administration of an ordinance, that construction should be accorded great weight in determining the meaning of the ordinance.

*William O. Lagoni* and *Hartwig, Crow & Jones* (by *John L. Crow*) for the plaintiff.

*Michael D. Marrs* and *Butzbaugh & Ryan, P.C.* (by *Mark A. Miller*), for the defendant.

Amicus Curiae:

*Beier, Howlett, Ternan, Jones, Shea & Hafeli, P.C.* (by *Lawrence R. Ternan* and *Dean G. Beier*), for Michigan Municipal League.

GRIFFIN, J. In this zoning case, the council of the Village of Michiana, sitting as the zoning board of appeals, denied plaintiff's request for a building permit on the ground that his lot failed to meet the width requirement of the local zoning ordinance. The board's decision was affirmed by the circuit court. We granted leave to determine whether the Court of Appeals applied the proper standard of review when it reversed the decision of the circuit court. We conclude that, while the standard was misstated, the Court of Appeals panel reached the correct result. We affirm, but remand the case for further proceedings.

I

Plaintiff is the owner of one and one-half contiguous platted lots in the Village of Michiana in Berrien County. The resulting parcel, irregular in

shape, is 137 feet deep measured from the street line, and 60 feet wide measured along the rear line. However, as illustrated in the appendix to this opinion, the parcel is not 60 feet wide at the street line because the front portion of the parcel is shaped like a rectangular "U" with the two legs of the "U" abutting the street, Ponchartrain Drive. The interior of the "U," a smaller rectangular parcel, 45 feet deep and 25 feet wide, which also abuts Ponchartrain Drive, is owned by Irwin Berg. Thus, plaintiff's parcel includes 35 feet of frontage on Ponchartrain Drive, 20 feet on one side of Berg's property, and 15 feet on the other.

In 1984 plaintiff applied for a permit to construct a house on his parcel. As proposed, the building would face the street, and the forward or front line of the building would be set back 69 feet from the street line. The width of plaintiff's parcel at the front of the proposed building is 60 feet, measured from sideline to sideline. The village building inspector refused to issue a permit on the ground that plaintiff's parcel did not measure at least 50 feet in width at the "front setback line" as he interpreted the zoning ordinance.[1]

Plaintiff appealed the denial of his building permit, claiming that his parcel was buildable under the plain language of the ordinance. The village council, sitting as the zoning board of appeals, held a public hearing. According to its counsel, the position of the village at the time of the hearing was that "the front setback line was an imaginary line 20 feet from the street and at that point the lot in question

---

[1] The term "front setback line" is used only in § 1, ¶ 7 of the zoning ordinance which provides:

> 7. LOT AREA. A parcel of land under common ownership with a minimum lot area of Five Thousand (5,000) square feet and a minimum width from side line to side line at the *front setback line* of Fifty (50) feet.

was not 50 feet wide but was only 35 feet wide."[2] On the other hand, plaintiff claimed that the "front setback line" is an imaginary line at the front of his proposed house where the width of the parcel is 60 feet.

A community planning consultant, appearing on behalf of plaintiff, testified that "front setback line" commonly means the line where the front part of the building sits on a lot, and that plaintiff thus fulfilled the ordinance's requirements because his lot is 60 feet wide at the front of the proposed building.

Mr. Berg, owner of the smaller interior parcel, spoke at the hearing and asserted that plaintiff had been advised by the building inspector prior to his purchase of the larger U-shaped parcel that it was "unbuildable." Berg read from a letter dated August 23, 1979, addressed to plaintiff and signed by the building inspector, stating that "the Building Code requires a minimum of 50-[foot] width at the street . . . ."[3]

---

[2] This statement of defendant village's position at the time of the hearing is set forth in defendant's brief in the Court of Appeals. It is consistent with a statement by defendant in a circuit court brief in opposition to a motion by plaintiff for summary disposition.

[3] In its brief, defendant contends that "it was common knowledge that the property [purchased by plaintiff] was not buildable at the time it was purchased." To support that contention, defendant set forth as a quote from the hearing record the following:

> *Mr. Owens:* When the land was purchased, it was common knowledge at that point that it was nonbuildable?

However, our review of the record indicates that Mr. Owens, apparently a public observer at the meeting, did not make such a statement; instead, he asked a question, viz.:

> *Mr. Owens:* When the land was purchased, *was it* common knowledge at that point that it was nonbuildable? [Emphasis added.]

It appears that Mr. Owens was not satisfied with the response

The village council affirmed the inspector's denial, giving as its principal reason that "[t]he property does not meet the width requirements at the front setback line of 50 feet in violation of Section 1, paragraph 7 [of the zoning ordinance]."[4]

Plaintiff then filed in the Berrien Circuit Court a complaint which, according to an order entered by Circuit Judge Chester J. Byrnes, was to be treated as a claim of appeal from the decision of the village council acting as the board of appeals.[5] The case was handled thereafter by Circuit Judge Ronald J. Taylor who considered and granted a motion by defendant for summary disposition pursuant to MCR 2.116(C)(8) (failure to state a claim upon which relief can be granted). Rendering his decision on the motion from the bench, the judge reasoned that defendant's interpretation of the ordinance "requiring measurements be made at a point where the property is uninterrupted" is a "rational, reasonable approach and . . . appears to be what I would call common sense."[6]

---

provided by plaintiff's attorney, William Lagoni, and the following exchange then took place:

> *Mr. Owens:* The only thing I want to know is his [plaintiff's] understanding, what his understanding was when he [bought] the property.
> *Mr. Lagoni:* I don't know, and I've advised my client not to answer that. I don't think it's relevant.

[4] The resolution also set forth two additional grounds for denial which are not at issue in this appeal. First, the resolution recites that because the soil on plaintiff's parcel consists of fine sand, "special written permission from the Building Inspector" would be required [pursuant to Village Ordinance One, Art 6, § 1], and "in the opinion of the Council, tests [would have] to be performed to determine whether or not the property is such that would support the load . . . ." Second, the resolution stated that plaintiff had not obtained a permit required by the Soil Erosion and Sedimentation Control Act. MCL 282.101; MSA 13.1820(1).

[5] See MCL 125.585(11); MSA 5.2935(11).

[6] It appears that the trial judge's decision was also based on his

On appeal, the Court of Appeals panel began its analysis with a statement that the trial court's ruling upon review "is to be tested by the pleadings alone." The opinion then recites that "[o]ur review in these cases is de novo but we accord great weight to the findings of the trial court and zoning board of appeals due to their opportunity to see and hear the witnesses," citing *Talcott v Midland,* 150 Mich App 143, 146; 387 NW2d 845 (1985), lv den 425 Mich 876 (1986). The panel also stated that "[t]he standard for granting appellate relief is whether our review of the record convinces us that we would have reached a different result had we sat as the trial court or zoning board of appeals."

Notwithstanding the suggestion that its review was to be limited to the pleadings alone, the panel reviewed the record and concluded that defendant had "offered no evidence to support its assertion that the setback must be measured from an uninterrupted line." Finding defendant's interpretation to be contrary to "existing definitions of setback," the Court of Appeals panel ruled that the circuit court had erred in determining that defendant's decision "was supported by competent, material and substantial evidence on the whole record and represented the reasonable exercise of its discretion." The Court of Appeals reversed and entered summary disposition for plaintiff.[7] Thereafter, we granted leave to appeal.[8]

---

finding that "if we measure the setback at 65 [sic] feet from the street line . . . [p]laintiff's building cannot be built on this lot, cannot fit on the lot" because to do so would violate another provision of the ordinance (§ 3, ¶ 4) requiring a backyard of not less than 20 feet in depth. After reviewing the site plan, the Court of Appeals concluded that the trial judge had erred because the 20-foot backyard requirement would be met. We agree.

[7] *Macenas v Village of Michiana,* 160 Mich App 72; 407 NW2d 634 (1987).

[8] 430 Mich 858 (1988).

## II

Before turning to the question how defendant's zoning ordinance is to be construed, we shall discuss certain statements made by the Court of Appeals concerning the standard of review.

### A

At the outset, it should be noted that on appeal from a decision by a zoning board of appeals, an appellate court is not limited to review of "the pleadings alone," as the Court of Appeals opinion seems to suggest. Once pleadings are filed in the circuit court which constitute a claim of appeal from a decision by a zoning board of appeals, as in the instant case, the circuit court acts as an appellate court.[9] For purposes of considering and correcting assigned error within the ambit of review outlined in MCL 125.585(11); MSA 5.2935(11), the circuit court is instructed by the statute to "review the record and decision of the board of appeals." Under such circumstances, and particularly where as in this case no challenge is made to the circuit court's determination that a claim of appeal has been filed, a motion for summary disposition pursuant to MCR 2.116(C)(8), which tests only the pleadings, is not

[9] MCL 125.585(11); MSA 5.2935(11) provides:

(11) The decision of the Board of Appeals shall be final. However, a person having an interest affected by the zoning ordinance may appeal to the circuit court. Upon appeal, the circuit court shall review the record and decision of the board of appeals to insure that the decision meets all of the following:

(a) Complies with the constitution and laws of this state.

(b) Is based upon proper procedure.

(c) Is supported by competent, material, and substantial evidence on the record.

(d) Represents the reasonable exercise of discretion granted by law to the board of appeals.

appropriate.[10] If a proper appeal to circuit court is filed, a "cause of action" is stated, at least for purposes of obtaining appellate review of the board's decision in accordance with the statute.[11]

B

In this appeal, defendant Village of Michiana is particularly critical of the following statement in the panel's opinion:

> Our review in these cases is de novo but we accord great weight to the findings of the trial court and zoning board of appeals due to their opportunity to see and hear the witnesses. The standard for granting appellate relief is whether our review of the record convinces us that we would have reached a different result had we sat as the trial court or zoning board of appeals. [160 Mich App 77.]

Defendant complains that the standard for granting appellate relief set forth in the second of the quoted sentences "directly contradicts the standard stated in the prior sentence." Defendant contends that the appeals panel treated itself as though "it were sitting as the trial court or Zoning Board of Appeals." Further, as defendant sees it, the second standard "is one of substitution of judgment" and does not "accord great weight to the findings of the trial court and Zoning Board of Appeals." Defendant argues that the panel dealt with this case as though it involved "a pure factual determination,"

[10] It is apparent from the record that in granting the motion for summary disposition, the circuit judge considered matters outside the scope of "the pleadings alone."

[11] Where the statute provides no guidance concerning procedure to be followed, court rules which generally govern such matters are applicable. For example, an appeal of right to circuit court must be claimed within twenty-one days after entry of the order or judgment appealed from. MCR 7.101(B)(1). See *Krohn v Saginaw*, 175 Mich App 193, 196; 437 NW2d 260 (1988).

whereas the issue presented is a question of law, one of interpreting the zoning ordinance.

Even though our analysis leads us to affirm the result reached by the Court of Appeals, we must agree with defendant that such statements in the opinion are confusing at best. However, a better understanding concerning the use of such language may be gained by a brief historical review of some of the pertinent statutory developments and case law in this field.

C

The Legislature gave cities and villages power to regulate land use through zoning in 1921 in the city and village zoning enabling act, 1921 PA 207.[12] The act provided that a decision of a zoning board of appeals would be "final" so far as it involved "discretion or the finding of facts."[13]

As one Michigan zoning commentator has observed, zoning involves "the hopes, aspirations, and ambitions of human beings and contests between them over competing interests." Crawford, Michigan Zoning & Planning (3d ed), p 4. To accommodate changing needs and expectations, zoning ordinances typically are worded so as to confer broad discretion on zoning boards; for example, giving them authority to grant variances in cases of "unnecessary hardship" or "practical difficulty." The exercise of this type of discretion is the wellspring of the typical zoning case.

Although the zoning enabling act has since been amended to provide for judicial review,[14] the 1921 act contained no provision for appeal from the decision of a zoning board of appeals. Nevertheless, cer-

[12] Currently MCL 125.581 et seq.; MSA 5.2931 et seq.

[13] 1921 PA 207, § 5(d).

[14] MCL 125.585(6); MSA 5.2935(6).

tain grounds for appeal were, and remain, implicit in zoning disputes.

From their inception, zoning laws have been subject to constitutional challenge, and judicial review of such claims has been available to define the extent to which constitutional guarantees limit the exercise of zoning authority.[15] In Michigan, at least two fundamental, judicially imposed restraints on zoning developed from these challenges: a zoning ordinance must be "reasonable" to be valid,[16] and it must bear a real and substantial relationship to the public health, safety, and welfare.[17]

*Beardsley v Evangelical Lutheran Bethlehem Church,* 261 Mich 458; 246 NW 180 (1933), is typical of early cases which fell into a second broad category. In these cases, an aggrieved person sought relief in court from the denial or grant by the zoning board of a building permit or variance. In *Beardsley,* property owners filed a suit to protest an order by the board of appeals which allowed neighbors to build a church at variance with zoning setback and height requirements. The *Beardsley* Court considered its power of review in such cases to be very limited. Pointing to the enabling act and the city's zoning ordinance, the Court concluded that

> [u]nder the statute and the ordinance, the discretion is that of the board, not the courts, and the decision is final, in the absence of fraud or bad faith, not here alleged. [*Beardsley, supra* at 461.]

In 1941 the Legislature adopted an amendment of the enabling act's finality provision which delayed

---

[15] The process began with *Village of Euclid v Ambler Realty Co,* 272 US 365; 47 S Ct 114; 71 L Ed 303 (1926). More recently, it has been advanced by *First English Evangelical Lutheran Church of Glendale v Los Angeles Co,* 482 US 304; 107 S Ct 2378; 96 L Ed 2d 250 (1987).

[16] *North Muskegon v Miller,* 249 Mich 52; 227 NW 743 (1929).

[17] *Long v Highland Park,* 329 Mich 146; 45 NW2d 10 (1950).

for five days the effective date of a zoning board decision. Even though the modification appeared rather insignificant on its face, this Court soon pointed to it as justification for a retreat from the "no review" rule of *Beardsley,* and in four cases, despite the absence of statutory language expressly authorizing it, we held that the decision of a zoning board of appeals decision could be reviewed for abuse of discretion. *Jones v DeVries,* 326 Mich 126, 132-133; 40 NW2d 317 (1949); *Mitchell v Grewal,* 338 Mich 81, 92; 61 NW2d 3 (1953); *Janigian v Dearborn,* 336 Mich 261, 264; 57 NW2d 876 (1953); *Tireman-Joy-Chicago Improvement Ass'n v Chernick,* 361 Mich 211, 219-221; 105 NW2d 57 (1960).

In the meantime, developments were also taking place with respect to the standard of review in cases where the constitutionality of a zoning ordinance, or the constitutionality of its application in a particular case, was at issue. In *Warner v Muskegon,* 344 Mich 408, 410; 73 NW2d 837 (1955), this Court held that such cases were to be heard "de novo, on [the basis of] the record."[18] In *Brae Burn, Inc v Bloomfield Hills,* 350 Mich 425, 430-431; 86 NW2d 166 (1957),[19] we not only upheld the constitutionality of a zoning ordinance but admonished that this Court is not to encroach upon the legislative responsibility of city councils in deciding the use to which land is to be put:

> In view of the frequency with which zoning cases are now appearing before this Court, we deem it

---

[18] It appears that this Court's reference to "de novo" review in actions attacking the constitutionality of a zoning ordinance stemmed from the fact that equitable relief was sought. See, e.g., *Christine Bldg Co v City of Troy,* 367 Mich 508, 517; 116 NW2d 816 (1962), where this Court stated: "We hear and consider chancery cases *de novo* on the record on appeal." See also *Biske v City of Troy,* 381 Mich 611, 613; 166 NW2d 453 (1969).

[19] See also *Kirk v Tyrone Twp,* 398 Mich 429; 247 NW2d 848 (1976); *Kropf v Sterling Heights,* 391 Mich 139; 215 NW2d 179 (1974).

expedient to point out again, in terms not suscepti-
ble of misconstruction, a fundamental principle: *this
Court does not sit as a superzoning commission.* Our
laws have wisely committed to the people of a com-
munity themselves the determination of their mu-
nicipal destiny, the degree to which the industrial
may have precedence over the residential, and the
areas carved out of each to be devoted to commercial
pursuits. With the wisdom or lack of wisdom of the
determination we are not concerned. The people of
the community, through their appropriate legisla-
tive body, and not the courts, govern its growth and
its life.[20] [Emphasis added.]

Later, in two cases in which the constitutionality
of zoning ordinances was at stake, this Court added
to the "de novo" standard the requirement that
"considerable weight" be given to findings by the
trial court "because the trial judge is in a better
position to test the credibility of witnesses." *Chris-
tine Bldg Co v City of Troy,* 367 Mich 508, 517-518;
116 NW2d 816 (1962); *Biske v City of Troy,* 381 Mich
611, 613; 166 NW2d 453 (1969).

Following creation of the Court of Appeals pursu-
ant to Const 1963, art 6, that Court reviewed a num-
ber of appeals from zoning boards decisions granting
or denying permits or variances, and frequently em-
ployed an "abuse of discretion" standard. See, e.g.,
*Zrenchik v Livonia Zoning Bd of Appeals,* 15 Mich
App 53, 54; 166 NW2d 59 (1968). In other cases
Court of Appeals panels pointed to Const 1963, art 6,
§ 28 as the standard of review. This provision reads:

[20] The proposition that "this Court does not sit as a superzoning
commission" was most recently repeated in *Schwartz v City of Flint,*
426 Mich 295, 307; 395 NW2d 678 (1986). In that case Justice
BRICKLEY, writing for the Court, held that a procedure first an-
nounced in *Ed Zaagman, Inc v City of Kentwood,* 406 Mich 137; 277
NW2d 475 (1979), whereby the trial court was required to determine
an appropriate use of land following a finding that the zoning ordi-
nance was unconstitutional, was an "improper assumption by the
judiciary of a legislative function."

All final decisions, findings, rulings and orders of any administrative officer or agency existing·under the constitution or by law, which are judicial or quasi-judicial and affect private rights or licenses, shall be subject to direct review by the courts as provided by law. This review shall include, *as a minimum,* the determination [of] whether such final decisions, findings, rulings and orders are authorized by law; and, in cases in which a hearing is required, whether the same are supported by competent, material and substantial evidence on the whole record. [Emphasis added.]

See, e.g., *Puritan-Greenfield Improvement Ass'n v Leo,* 7 Mich App 659, 665; 153 NW2d 162 (1967); *Dearden v Detroit,* 70 Mich App 163, 171; 245 NW2d 700 (1976), rev'd on other grounds 403 Mich 257 (1978).

Finally, in 1978 PA 638, the Legislature further amended the cities and villages zoning enabling act, and added a subsection which expressly provides for review by the circuit court of a decision by a zoning board of appeals:

The decision of the board of appeals shall be final. However, a person having an interest affected by the zoning ordinance may appeal to the circuit court. Upon appeal, the circuit court shall review the record and decision of the board of appeals to insure that the decision:

(a) Complies with the constitution and laws of the state.

(b) Is based upon proper procedure.

(c) Is supported by competent, material, and substantial evidence on the record.

(d) Represents the reasonable exercise of discre-

tion granted by law to the board of appeals.[21] [MCL 125.585(6); MSA 5.2935(6), currently MCL 125.585(11); MSA 5.2935(11).]

Perhaps it is not surprising that, following the addition of this subsection, panels of the Court of Appeals have referred to its provisions as the standard of review on appeal. See, e.g., *Nat'l Boatland, Inc v Farmington Hills Zoning Bd of Appeals*, 146 Mich App 380, 384; 380 NW2d 472 (1985).[22]

Notwithstanding the 1978 amendment, appellate courts have continued to employ as a standard de novo review coupled with the requirement that "considerable weight," or in some cases "great weight," be given to findings by the trial court and the board of zoning appeals.[23] Moreover, as this case illustrates, the Court of Appeals has not limited its application of that standard to cases involving a constitutional challenge.[24]

III

Against that background, it must be quite apparent, not only that appellate courts have not always been consistent in describing a standard of review, but also that there is no single standard of review that applies in zoning cases.

[21] The language of this subsection generally follows the scope of review set forth in the Administrative Procedures Act of 1969, MCL 24.306; MSA 3.560(206).

[22] In *Nat'l Boatland*, the Court of Appeals cited § 23a of the Township Rural Zoning Act, MCL 125.271 *et seq.*; MSA 5.2963(1) *et seq.*, which is identical to § 5(11) of the city and village zoning enabling act. Apparently this was an error since Farmington Hills was a city at the time, not a township.

[23] See *Ed Zaagman, Inc v City of Kentwood*, n 20 *supra; Belkin v City of Birmingham*, 87 Mich App 690, 700; 276 NW2d 465 (1978), modified 406 Mich 949 (1979); *Schwartz v City of Flint (After Remand)*, 120 Mich App 449, 457; 329 NW2d 26 (1982).

[24] See also *Talcott v Midland*, 150 Mich App 143; 387 NW2d 845 (1985).

The typical zoning case often presents questions that are a mix of law and fact. This convergence tends at times to obscure the principle that courts have primary authority to determine questions of law. "Where the facts relating to a particular use are not in dispute, the legal effect of those facts, that is, how the terms of the ordinance are to be interpreted in relation to the facts, is a matter of law, and the courts are not bound by the decisions of administrative bodies on questions of law." 3 Rathkopf, The Law of Zoning & Planning (4th ed), § 42.07, p 42-69.

The statute instructs courts to defer to determinations of fact made by an appeals board if supported by competent, material, and substantial evidence on the record, MCL 125.585(11)(c); MSA 5.2935(11)(c). The board's decisions based on those determinations of fact are to be deferred to provided they are procedurally proper, MCL 125.585(11)(b); MSA 5.2935(11)(b); and are a reasonable exercise of the board's discretion, MCL 125.585(11)(d); MSA 5.2935(11)(d). This deference, however, does not undercut the authority of the court to decide questions of law as they arise in the course of a review of appeals board actions and to negate actions that are so unreasonable as to rise to the level of unconstitutionality. How the court's scope of review should operate in the face of mixed questions of fact and law has been neatly summarized as follows:

> Where the primary question is whether the ordinance provision applies in the given situation, there are two questions for determination:
> (1) What are the facts which, taken together, can be said to describe the situation?
> (2) How does the ordinance apply to those facts?
> Determination of the first question is for the board to decide; if its determination with respect to this is reasonable and is supported by substantial evidence in the record, even though debatable, it should be

accepted by the court on review. Determination of
the second question, i.e., what the ordinance means
in relation to the facts is a question of law for the
courts to decide. [Rathkopf, *supra,* p 42-70.]

The instant case is a relatively rare type of zoning
case in which the dispute centers on a question of
pure law: what does "front setback line" mean? Nev-
ertheless, this case presents a useful illustration of
the fact/law distinction which is often critical to a
determination of the appropriate standard of re-
view. Defendant contends that its denial of
plaintiff's building permit is based on a longstand-
ing interpretation of its ordinance. Plaintiff disputes
this, claiming that his property is unique in the vil-
lage and that until now defendant has not been
called upon to define "front setback line." Whether
defendant's interpretation is indeed the long-estab-
lished, common understanding of the community or
has been newly minted to apply to plaintiff's prop-
erty is a question of fact. If defendant's contention is
supported by "competent, material, and substantial
evidence on the record," a reviewing court should
not find otherwise. However, how much weight, if
any, is to be given to such a fact, once established, is
a question of law concerning which the court's judg-
ment is primary.

When the question of law is the construction of an
ambiguous ordinance, the constraints of the rules of
statutory construction are of foremost importance.
The court is not free to substitute its judgment by
imposing what it considers to be the wisest version
of the ordinance, but is confined to an analysis of the
text of the ordinance and, in the face of ambiguity, a
determination of what the legislative body that en-

acted the ordinance intended by the language in question.[25]

Case law provides guidance on a specific question raised by the instant case: whether, and to what extent, a court should defer to a zoning board's construction of its own ordinance. In *Paye v Grosse Pointe,* 279 Mich 254; 271 NW 826 (1937), the city challenged a lower court's authority to overturn the zoning board's construction of its own ordinance, and called this Court's attention to the zoning act's provision that the decision of a board of appeals "shall be final so far as it involves discretion or the finding of facts."[26] Rejecting the city's argument, this Court said:

> We hardly supposed that anyone doubted that the construction of a statute or ordinance is a matter of law and not of fact. This is a well-recognized judicial function. It is the duty of courts to construe the language of the statute and while "the construction given to a statute by those charged with the duty of executing it is always entitled to the most respectful consideration and ought not to be overruled without cogent reasons," such construction is not binding upon the courts. [*Id.,* 259-260, quoting *Boyer-Campbell Co v Fry,* 271 Mich 282; 260 NW 165 (1935).]

More recently, this Court addressed the question of the weight to be accorded an administrative interpretation in *Davis v River Rouge Bd of Ed,* 406 Mich 486, 490; 280 NW2d 453 (1979). In that case we were called upon to construe a provision of the teacher tenure act, MCL 38.104(e); MSA 15.2004(e). Stating that the construction placed upon a statute by the agency legislatively chosen to administer it is enti-

---

[25] The general principles of statutory construction apply to the interpretation of zoning ordinances. 8 McQuillin, Municipal Corporations (3d ed), § 25.71, p 195.

[26] 1929 CL 2637, subd (d).

tled to "great weight," the Court nevertheless disagreed with the agency's interpretation, and imposed what appeared to the Court to be a construction more reasonably in accord with the Legislature's intent. *Id.* at 490.

Thus, the import of our case law is that a reviewing court is to give deference to a municipality's interpretation of its own ordinance. How much deference to accord in a particular case, however, is unanswered by this general principle. We are persuaded that in cases of ambiguity in a municipal zoning ordinance, where a construction has been applied over an extended period by the officer or agency charged with its administration, that construction should be accorded great weight in determining the meaning of the ordinance. See *Sinelli v Birmingham Bd of Zoning Appeals,* 160 Mich App 649, 652; 408 NW2d 412 (1987).[27]

IV

Having discussed principles which are available to guide the court in construing a zoning ordinance, we turn now to an analysis of the Village of Michiana ordinance. Because defendant's denial of a building permit was based on the zoning ordinance requirement that a buildable lot have a minimum width of 50 feet at the *front setback line,* a term undefined in the ordinance, our task is to determine the meaning of "front setback line."

A preliminary difficulty we face is that during the course of this dispute there have been at least two different definitions or interpretations of the term "front setback line" attributed to the defendant.

---

[27] In *Sinelli* there was record support for the City of Birmingham's assertion that it had consistently interpreted its zoning ordinance in a particular manner over an extended period of time. An affidavit executed by the city's building official listed specific earlier instances when the city's interpretation of the ordinance had been so applied. *Id.* at 653.

Defendant's brief in the circuit court in opposition to a motion by plaintiff for summary judgment stated: "It is the Village of Michiana's interpretation of its own Ordinance that a lot in order to be a buildable . . . must have a width of 50 feet along a line parallel to the street *at a distance 20 feet from the street line* which is considered by the Village of Michiana to be the front setback line."

However, defendant's brief in this Court states that "front setback line has traditionally been interpreted by the Village to be *that line where the property meets the street.*"

In contrast, plaintiff contends that common usage of the term "setback" requires that the "front setback line" be measured at the front part of the proposed building.

For purposes of our analysis, we will assume that defendant's position is the one stated in its brief before this Court: that "front setback line" means the street line. We look now to the pertinent provisions of defendant's zoning ordinance:

SECTION 1—DEFINITIONS

\*     \*     \*

7. LOT AREA. A parcel of land under common ownership with a minimum lot area of Five Thousand (5,000) square feet and a *minimum width from side line to side line at the front setback line of Fifty (50) feet.*

\*     \*     \*

10. SETBACK. The minimum horizontal distance between the front line of the building and the street line.

\*     \*     \*

SECTION 3—RESIDENCE DISTRICT

\*     \*     \*

(B) Area Regulations.

1. LOT AREA. Each building hereafter erected or

altered in the Residence District shall provide a lot with area dimensions conforming with the minimum requirements heretofore described, and no building shall hereafter be erected on a lot area smaller than prescribed herein. (See Section 1, Paragraph 7.) No lot area shall be so reduced or diminished that the yards or open spaces shall be smaller than prescribed by this ordinance.

2. SETBACK. *There shall be a setback line of not less than twenty feet from the street line* provided that when a majority of the buildings built on one side of a street between two intersecting streets at the time of the passage of this ordinance shall have been built with a minimum setback of more or less than twenty feet from the street line no building hereafter erected or altered shall project beyond the minimum setback line so established. [Emphasis added.]

It is apparent that the text alone does not provide a "plain language" meaning of "front setback line," as it might, for example, if ¶ 7 of § 10 did not use the word "front," or if ¶ (B)2 of § 3 used the words "front setback line" rather than "street line." When there is no readily apparent meaning to a statutory phrase, we ordinarily turn to an attempt to determine the intent of the legislative body that enacted the statute or ordinance. However, the arsenal of aids sometimes available to help establish legislative intent is not at hand in the instant case. We have no legislative history to consider. Further, most of the canons of construction are not appropriate to aim at this relatively simple target. Faced with such limitations in our consideration of the Michiana ordinance, we make two preliminary assumptions. First, we assume that the village intended to accomplish what municipalities generally intend to accomplish by adopting a setback provision: to establish a buffer zone between buildings

and the street.[28] Second, in the absence of evidence to the contrary, we assume that the village did not intentionally adopt an idiosyncratic meaning for "setback," a term that is common to zoning ordinances.

As we see it, to interpret "front setback line" as the street line of a lot would clearly attribute to the phrase an idiosyncratic meaning. It would be conceptually awkward, at best, to describe a line that is not "set back" from anything as the front setback line. Defendant's explanation that the front setback line is the front of a setback "area," the backside of which is the front of the proposed building, does nothing to dispel our sense that such an interpretation turns the common-sense understanding of "set back" on its head. This is particularly true when the ordinance also contains a provision calling for a *minimum* setback of 20 feet from the street. Moreover, defendant's conventional use of the word "setback" in the ordinance as a whole supports the conclusion that a different, idiosyncratic meaning was not intended in the phrase "front setback line."

Defendant's ordinance is ambiguous in the sense that its meaning is not readily apparent, but it is not so ambiguous that it can accommodate the meaning attributed to it by defendant. Our examination of the ordinance convinces us that plaintiff and the Court of Appeals are correct in concluding that defendant's interpretation is not reasonable. Deference to a local zoning board may require a court to defer to the board's choice of a particular shade of gray to define an ambiguous reference to gray, but it

---

[28] Setback regulations normally prescribe the distance between the fronts of buildings and abutting streets. Setback provisions accomplish their purposes by either requiring buildings to be set back a minimum distance or by prohibiting the construction of buildings within a minimum specified distance. [6 Rohan, Zoning & Land Use Controls, § 42.04(1), p 42-95.]

does not require us to endorse a board's insistence that "black" means "white."

Our conclusion is reinforced by the fact that defendant's interpretation of "front setback line" has been something of a moving target. We agree with the Court of Appeals that on this record defendant did not establish by competent, material, and substantial evidence that a longstanding practical or common interpretation consistent with its claim existed in fact.

Finding that no practical or common construction was consistently given to the phrase "front setback line" over an extended period of time by the officer or agency charged with administration of the ordinance, we apply the review standard suggested by our decision in *Paye, supra.* After according "respectful consideration" to the construction given the ordinance by the board, we conclude that there are "cogent reasons" for overturning the board's decision.

V

Accordingly, we affirm the decision of the Court of Appeals insofar as it relates to the construction of the setback provision in defendant's ordinance. However, we reverse that Court's decision with respect to its grant to plaintiff of summary disposition.

As indicated, see n 4, defendant advanced as additional reasons for its denial of the permit plaintiff's alleged failure to meet the requirement of another ordinance provision relating to soil support, and plaintiff's alleged failure to obtain a permit pursuant to the Soil Erosion and Sedimentation Control Act, MCL 282.101; MSA 13.1820(1). Because it is unclear from the record whether plaintiff is required to meet these conditions, and if so, whether he has complied with them, we remand this case to the circuit court for further proceedings consistent with this opinion.

Riley, C.J., and Levin, Brickley, Cavanagh, and Boyle, JJ., concurred with Griffin, J.

Archer, J., concurred in the result only.

**APPENDIX**