WALSH CONSTRUCTION COMPANY
OF ILLINOIS, an Illinois
corporation, Plaintiff,

v.

CITY OF DETROIT, a Municipal corporation; the Detroit City Council; the Detroit Board of Water Commissioners; Audrey Jackson, solely in her capacity as Purchasing Director of the Finance Department of the City of Detroit; Victor M. Mercado, solely in his capacity as Director of the Detroit Water and Sewage Department; Walbridge Aldinger Company; W3 Construction Co.; Barton–Malow Co.; W3/Barton–Malow Joint Venture; L. D'Agostini & Sons; Alberici Constructors, Inc.; and Jay–Dee Contractors, Inc. Defendants.

No. CIV. 03–70831.

United States District Court,
E.D. Michigan,
Southern Division.

April 7, 2003.

Eric J. Flessland, Melvin J. Hollowell, Jr., Thomas D. Noonan, Butzel Long, Detroit, MI, Steven G. Stein, Stein, Ray, et al., Chicago, IL, for Plaintiff.

Robert J. Franzinger, Mark D. Jacobs, Shannon K. Anderson, Dykema Gossett, Detroit, MI, for Defendants.

Stuart H. Teger, Honigman Miller, et al., Detroit, MI, for Walbridge.

## OPINION AND ORDER

FEIKENS, District Judge.

### *INTRODUCTION*

Walsh Construction Co. ("Walsh") brings this case to challenge the City of Detroit's [1] ("City" or "Detroit") preference

---

1. The challenge is as to the procedures by which the Detroit Water and Sewerage Department (DWSD) awards contracts, which are subject to approval by the other named city defendants.

for locally-based and locally-headquartered businesses through the use of equalization percentage credits (the "credits") in its bid-selection process. Plaintiff, a Detroit-based business, failed to win a bid for the DWSD contract ("Contract") because Walbridge–Aldinger Company ("Walbridge"), a Detroit-based business that is also headquartered in Detroit, received additional credits for being headquartered in Detroit. Walsh alleges that Detroit interpreted its own ordinance incorrectly and that, even if Detroit's interpretation was correct, its ordinance nonetheless violates the Equal Protection and Due Process Clauses of the United States Constitution. Detroit, in its supplemental brief, also moves to dismiss pursuant to Fed.R.Civ.P. Rule 12(b)(6) or, in the alternative, for summary judgment under Fed.R.Civ.P. Rule 56. For the reasons below, Walsh's motion for a temporary restraining order is DENIED, and Detroit's motion to dismiss is GRANTED.

## FACTUAL BACKGROUND

The facts in this case are undisputed. In October, 2002, Detroit, though DWSD, invited interested parties to submit bids to perform a contract involving the construction of a Baby Creek CSO Control Facility as required by a consent judgment that I currently monitor. *See* Second Amended Consent Judgment, case no. 77–71100; Feikens J. (August 3, 2000). Six bidders submitted bids, including Walsh and Walbridge. Five of the bidders, including Walsh and Walbridge, were certified by the City as "Detroit–Based Businesses." Only one of the bidders, defendant Alberici Constructors, Inc. ("Alberici"), is not a Detroit-based business.

When the bids were opened in February, 2003, and before DWSD applied the credits, Walsh submitted the lowest bid at $72,560,000. Walbridge submitted the second-lowest bid at $73,106,728. Alberici submitted the fifth-lowest bid at $73,910,581.

In a letter dated February 10, 2003, Daniel Edwards of the DWSD Construction Contracts Section indicated that after applying the credits, Walbridge was the lowest bidder and was awarded the contract because, in addition to being a Detroit-based business, Walbridge is entitled to additional credits for being headquartered in Detroit.

## ANALYSIS

Walsh makes three contentions: first, it contends that the City misconstrued Section 18–5–2d, and that, according to Walsh's construction of the ordinance, it would have won the bid; second, if the City construed the ordinance correctly, then the ordinance violates the Equal Protection Clause of United States Constitution because it treats similarly situated bidders differently; and third, if the City construed the ordinance correctly, then the ordinance violates the Due Process Clause of the United States Constitution because it does not provide Walsh an avenue for appeal. I examine each contention in turn.

### A. *Standard of Review*

Under Rule 12(b)(6), I must construe the complaint in a light most favorable to the plaintiffs, accept all of the factual allegations as true, and determine whether the plaintiffs undoubtedly can prove no set of facts in support of their claims that would entitle them to relief. *Claybrook v. Birchwell,* 199 F.3d 350 (6th Cir.2000) (citations omitted). Since the facts in this case are undisputed, I can decide this case as a pure matter of law.

### B. *Walsh's Challenge of the City of Detroit's Interpretation of Section 18–5–2*

Section 18–5–2 of the Detroit city ordinance governs the awarding of City contracts. Subsection d. outlines the process that the City used to evaluate competing

bids from different bidders. Subsection d. provides that:

> In comparing bids, the bid of any Detroit-based business or Detroit-resident business shall be deemed a better bid than the bid of any competing firm which is not a Detroit-based business or Detroit-resident business whenever the bid of such competing firm shall be equal to or higher than the bid of the Detroit-based business or Detroit-resident business, after the appropriate equalization percentage credit from the equalization allowance table has been applied to the bid of the Detroit-based firm.

| Contract Amount | Equalization Percentage |
| --- | --- |
| . . . | . . . |
| $500,000.01 and over | 2% |

> . . .
>
> If the bidder has qualified as a Detroit-based business by virtue of having its headquarters in Detroit, it shall receive the equalization factor in the preceding table plus an additional three (3) percent.

Detroit City Ordinance § 18–5–2d.1.

Detroit interprets this ordinance to mean that the equalization percentage credits will only be applied when a non-Detroit based business has submitted a bid. Conversely, no credits are applied when all the bidders are Detroit-based businesses. *See* City Law Department December 14, 2000 and August 19, 2002 letters.[2]

Walsh contends that this reading of the ordinance is erroneous. Walsh argues that the ordinance requires that the equalization percentage credits only be applied when comparing individual bids between Detroit-based businesses and non-Detroit based businesses, but when comparing individual bids between Detroit-based businesses, no credits can be applied. There-

fore, it contends, Walsh should have been awarded the contract because Walsh had the lower bid between Walbridge and itself(without applying the credits).

1. *Standard of Review for City of Detroit's Interpretation of Detroit City Ordinance*

■ My review of Detroit's ordinance is governed by Michigan law. Under Michigan law, municipal ordinances and statutes are construed under the same principles. *Macenas v. Village of Michiana,* 433 Mich. 380, 397, 446 N.W.2d 102 (1989). When construing a statute, courts must first examine the plain language of the statute. *Danse Corp. v. City of Madison Heights,* 466 Mich. 175 at 182, 644 N.W.2d 721 (2002). If the language is unambiguous, then the statute must be applied as written. *Id.* If there is ambiguity in the language of the statute, a reviewing court is to give deference to a municipality's interpretation of its own ordinance. See *Macenas, supra* at 397, 446 N.W.2d 102. Although the degree of deference is unclear, the court in *Macenas* held that where the construction of the ordinance has been applied over an extended period of time, it is entitled to "great weight." *Id.* at 397, 446 N.W.2d 102. Thus, I read this standard to be similar to the "arbitrary and capricious" standard of review and the proper question before me is whether the Detroit's interpretation of Section 18–5–2 was arbitrary and capricious.

2. *Whether Detroit's Interpretation was Arbitrary and Capricious*

■ There are several reasonable interpretations to the plain language of the ordinance as to the application of the credits when comparing bids between Detroit-

---

**2.** It is also noted that these letters predate this controversy by at least five months, and Walsh does not contend that the City has applied its interpretation inconsistently.

based businesses. It only requires that the credits be applied when comparing bids between Detroit-based business and non-Detroit-based businesses, but does not provide explicit guidance for comparing bids between Detroit-based businesses.[3]

In order for Walsh's reading to prevail, the ordinance must unambiguously support its position. First, it must unambiguously apply exclusively to bid comparisons between Detroit-based and non-Detroit-based businesses and cannot be applied to bid-comparisons between Detroit-based businesses. Second, the ordinance must only permit for bid-comparisons on a one-on-one basis and not permit a group-wide comparison.

However, the plain language of the ordinance does not place such exclusive boundaries on the application of the credits. The first prepositional phrase of the ordinance, "[i]n comparing bids, . . . ." includes all bids, and not only to individual bids between a Detroit-based business and a non-Detroit-based business. It does not unambiguously refer only to bids between Detroit-based and non-Detroit-based businesses.

Second, the language does not explicitly limit the comparison of bids to be one-on-one. Once again, "[i]n comparing bids,..." is dispositive here. "[B]ids" is plural, and can be reasonably interpreted to include the comparison of bids corporately, as opposed to serially.[4]

Indeed, if the ordinance demands serial comparisons, it could lead to a catch–22 situation where no bidder is the lowest bidder. For instance, let us suppose that three bidders, Non–Detroit bidder, Detroit bidder, and Detroit–HQ–bidder, all submit bids for a Detroit contract. The Non–Detroit bidder has the lowest bid at $100, Detroit–HQ–bidder's bid is $104, and Detroit-bidder's bid $103.[5] After applying the equalization percentage credits as proposed by Walsh, Detroit–HQ bidder would beat Non–Detroit bidder with a bid of $98.8 after receiving a 5% credit, Non–Detroit bidder would beat Detroit-bidder, whose bid is $100.94 after a 2% credit, and Detroit-bidder would beat out Detroit–HQ–bidder because no credits are applied. In this scenario, there would be no lowest bidder.

As I read it, the ordinance can reasonably be applied in three ways: first, by applying the credits every time that bids are submitted, including the headquarter factor; second, by applying the credits only when a non-Detroit business submits a bid, and not applying the factors when all bidders are Detroit businesses; and third, only applying the credits between Detroit-based businesses and non-Detroit businesses, but not applying the credits

---

3. Walsh conceded that this is the case when it said in its reply brief in support of a motion for temporary restraining order that "[Section 18–5–2d.1] provides *absolutely no language* to support the comparison of bids by Detroit Businesses against each other." (emphasis in original).

4. Walsh's position would be greatly strengthened if the ordinance contained the exclusive language such as "the equalization percentage credits shall not be applied when comparing bids between Detroit-based businesses" or if the first sentence limited the application of the credits to "comparing bids between Detroit-based businesses and non-Detroit-based businesses." However, the ordinance does not contain such exclusive language and I cannot read it into the ordinance.

5. Even though the ordinance provides different amount of credits for bids under $500,000.01 (*See* Detroit City Ordinance Section 18–5–2d.1), the $100 bid is only used as a hypothetical. If the bids were indeed around $100, different equalization percentages would apply.

between Detroit-based businesses. Detroit chose the second reading.

Thus, Detroit's reading of the ordinance was a reasonable interpretation of the ordinance, and is not arbitrary or capricious.

C. *Whether Section 18–5–2, as interpreted by the City of Detroit, Violate the Equal Protection Clause of the Fourteenth Amendment*

Walsh contends that Section 18–5–2, as interpreted by the City of Detroit, violates the Equal Protection Clause because it treats similarly situated bidders unequally and is not reasonably related to advance a legitimate state purpose.

■ It is settled law that applying modest credits to local businesses does not offend the Equal Protection Clause. *See Assoc. Gen. Contr. of Cal. v. County of San Francisco,* 813 F.2d 922 (9th Cir.1987) (upholding a five percent credit for local businesses submitting bids for city contracts) *other portion overruled* in *Assoc. Gen. Contr. of Cal. v. Coalition for Economic Equity,* 950 F.2d 1401; *Smith Setzer & Sons, Inc. v. South Carolina Procurement Panel,* 20 F.3d 1311 (4th Cir.1994) (upholding a two percent preference in favor of local bidders for contracts less than $2,500,000 and a one percent preference in favor of local bidders for contracts over $2,500,000).

■ The Equal Protection Clause of the Fourteenth Amendment commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a directive that all persons similarly situated should be treated alike. *City of Cleburne v. Cleburne Living Center, Inc.,* 473 U.S. 432 at 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). While suspect and quasi-suspect classifications are subject to more rigorous scrutiny by the courts, the general rule is that a classification will survive constitutional scrutiny if it is rationally related to a legitimate governmental purpose. *Id.* Walsh contends that it is being treated dissimilarly based on the fortuitous happenstance that a non-Detroit business submits a bid. Since no suspect classification is involved in this case, rational basis review applies.

■ Walsh's contention is without merit. A bidder in a different bid cannot be said to be "similarly situated" to Walsh. Walsh cannot complain of unequal treatment when it is also part of the other group that is allegedly receiving the favorable treatment. While the ordinance did not serve Walsh's interest in this particular instance, it helps Walsh when all the bidders are Detroit-based businesses. Walsh cannot complain of an equal protection violation when it benefits in one situation, but not the other.

■ In any event, even if I accept that Walsh is similarly situated with a hypothetical bidder, the application of the equalization percentage credits to bids where non-Detroit bidders are present is rationally related to a legitimate state purpose of promoting local businesses. When examining an ordinance under rationality review, the ordinance need not be perfect, only rationally related. *See Setzer & Sons, Inc., supra* at 1323 ("If the classification is 'at least debatable,' the law will stand, for as long as the legislature '*could rationally have decided*' that its own action would further its goal, the Equal Protection Clause is satisfied") (emphasis in original) (citations omitted). In this case, the ordinance, as interpreted, gives local businesses an advantage in cases where a non-Detroit based business is in the bid. Thus, it is rationally related to a legitimate state purpose.

■ Walsh also argues that Detroit's interpretation violates the Equal Protection Clause because it encourages Detroit-

based businesses who also qualify for other credits to collude with non-Detroit-based businesses who otherwise would not submit bids. While this argument is novel, Walsh does not have standing to raise that issue now. Walsh does not allege fraud or collusion here and has no standing to bring a case under Article III of the United States Constitution. *See Lujan v. National Wildlife Federation*, 497 U.S. 871, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990) (holding that plaintiffs' affidavit expressing future desires to see endangered wildlife without any concrete dates was too remote to confer standing to challenge revision of a federal regulation exempting application of the Endangered Species Act to United States government activities outside the United States).

D. *Whether 18–5–2, as interpreted by the City of Detroit, Violates the Due Process Clause of the Fourteenth Amendment*

■ The Due Process Clause of Fourteenth Amendment provides that "nor shall any State deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV. In *Michigan Paytel Joint Venture v. City of Detroit*, 287 F.3d 527, 539–40 (6th Cir.2002), the United States Court of Appeals for the Sixth Circuit was confronted with a similar due process challenge to Detroit's bid-selection process. In rejecting the disappointed bidder's due process challenge, the court held that "disappointed bidders to a government contract can demonstrate a protected property interest [by] show[ing] that they were awarded the contract and then deprived of it, or they may claim that state law granted the government entity limited discretion in awarding the contract, which the entity abused." *Id.* at 539–40.

Walsh has failed to meet either criterion in this case. First, it is undisputed that Detroit never awarded the contract to Walsh. Second, it is also undisputed that the City had discretion in awarding the contract. The advertisement for bids in this case explicitly provided that:

> [T]he Owner expressly reserves the right to reject any and all Bids, waive any non-conformances, to issue post-Bid Addenda and re-Bid the Work without re-advertising, to re-advertise for Bids, to withhold the award for any reason the Owner determines and/or to take any other appropriate action.

PC–478, page 00030–1, Section 9. Thus, Walsh has failed to demonstrate that it has a protected property interest under the Due Process Clause.

## CONCLUSION

For the reasons above, Walsh has failed to state a claim upon which relief can be granted. Therefore, Walsh's motion for a temporary restraining order is DENIED and this case is DISMISSED under Fed. R.Civ.P. 12(b)(6).

**IT IS SO ORDERED.**