# STATE OF MICHIGAN

# COURT OF APPEALS

CITY OF DETROIT,

Petitioner-Appellant,

v

CITY OF DETROIT BOARD OF ZONING
APPEALS,

Respondent-Appellee,

and

INTERNATIONAL OUTDOOR INC.,

Intervenor-Appellee.

FOR PUBLICATION
October 23, 2018

No. 339018
Wayne Circuit Court
LC No. 16-001949-AA

Before: CAMERON, P.J., and RONAYNE KRAUSE and TUKEL, JJ.

RONAYNE KRAUSE, J. *(dissenting)*.

I respectfully dissent. On the facts and circumstances of this case, the City of Detroit Board of Zoning Appeals (the BZA) did not have the authority to grant the specific variance at issue, and International Outdoor (IO) was not entitled to that variance. I would find in favor of the City of Detroit (the City), and reverse.

## I. FACTUAL BACKGROUND

In 2011, IO purchased a small parcel of property adjacent to an expressway in the City, measuring approximately 5,520 square feet, for $5,000.00. At the time of the purchase, the parcel was subject to the City's zoning ordinance banning "off-site" advertising[1] within the "Grand Boulevard Overlay Zone," pursuant to the City's overarching plan to improve the area. IO is a sophisticated and experienced entity, so it either knew or should have known that billboards were not permitted. The BZA initially voted to deny IO's requested use variance, but

[1] At oral argument, it was explained that billboards were the "epitome" of "off-site" advertising. In contrast, a business placing a sign for itself on its own premises would be considered permissible "on-site" advertising.

one board member bizarrely changed her vote after being told that there was not a majority and the variance would not pass, on the apparent basis that the overlay zone was an unimportant concern. IO estimated that the property is worth approximately $5,000.00.

## II.  STANDARD OF REVIEW

"[T]here is no single standard of review that applies in zoning cases." *Macenas v Village of Michiana*, 433 Mich 380, 394; 446 NW2d 102 (1989). A zoning appeal board's factual determinations are given deference "if supported by competent, material, and substantial evidence on the record." *Id*. at 395. Decisions based on those factual determinations will likewise be given deference if they are "procedurally proper" and "a reasonable exercise of the board's discretion." *Id*. However, the courts do not defer to determinations of law, including "what the ordinance means in relation to the facts." *Id*. at 395-396 (quotation omitted). Issues of statutory construction, including the interpretation and application of ordinances, are reviewed de novo. *Soupal v Shady View, Inc*, 469 Mich 458, 462; 672 NW2d 171 (2003); *Great Lakes Society v Georgetown Charter Twp*, 281 Mich App 396, 407; 761 NW2d 371 (2008). Legal doctrines are likewise reviewed de novo. *Estes v Titus*, 481 Mich 573, 578-579; 751 NW2d 493 (2008).

## III.  PERMISSIBILITY UNDER THE ORDINANCE

The Michigan Zoning Enabling Act (the ZEA), MCL 125.3101 *et seq*., allows municipalities such as the City to adopt zoning ordinance provisions under which use variances can be granted. MCL 125.3604(11). However, in granting such use variances, "the spirit of the zoning ordinance" must be "observed." MCL 125.3604(7). Consistent with the ZEA, the City's zoning ordinance establishes that the BZA is empowered to "perform its duties and exercise its powers as provided for by law in such a way that the purpose and intent of this Zoning Ordinance shall be observed, public safety secured, and substantial justice done." Detroit Zoning Code § 61-2-41. The ordinance provides for use variances pursuant to its hardship relief petition procedure. Detroit Zoning Code § 61-4-101. Under that procedure, if a property owner establishes a "hardship," defined as "a denial of all reasonable economic use of the property," the BZA "*may* provide the petitioner with relief from applicable zoning regulations." Detroit Zoning Code § 61-4-103 (emphasis added). Any such grant is therefore permissive and discretionary. The hardship relief procedure does not provide any guidance for exercising that discretion. However, several guides to and restrictions on the BZA's discretion are found elsewhere in the ordinance.

Importantly, a hardship is unambiguously not the only mandatory prerequisite for granting a use variance. The ordinance division addressing "variances and administrative adjustments" explicitly provides, in relevant part, that variances must comport with *all* ten enumerated criteria. Detroit Zoning Code § 61-4-81. One criterion is that "the requested variance or administrative adjustment is consistent with the Master Plan and the spirit, purpose, and intent of this Zoning Ordinance." Detroit Zoning Code § 61-4-81(1). Another is that "the variance or administrative adjustment shall not permit the establishment, within a zoning district, of any use which is prohibited within the district." Detroit Zoning Code § 61-4-81(8). These requirements are consistent with the statutory mandate that use variances must comport with "the spirit of the zoning ordinance." MCL 125.3604(7). Indeed, MCL 125.3604(7) explicitly permits

use variances only where a hardship is "in the way of carrying out *the strict letter* of the zoning ordinance" (emphasis added). Consequently, although "[a] land use variance essentially is a license to use property in a way not permitted under an ordinance," such variances must not functionally effectuate a rezoning. *Paragon Properties Co v City of Novi*, 452 Mich 568, 575-576; 550 NW2d 772 (1996). In other words, the BZA does not have unfettered discretion to grant any variance merely because doing so would ameliorate a hardship.

Under the City's zoning ordinance, "overlay zones" are geographic sub-regions with their own special rules above and beyond the regulations otherwise applicable to any given zoning classification. The Grand Boulevard Overlay Zone at issue only has three such special rules. See Detroit Zoning Code § 61-11-332. One of those rules prohibits certain advertising signs, as set forth in § 61-6-65. Detroit Zoning Code § 61-11-332(b).[2] In full, § 61-6-65 provides as follows:

> It shall be unlawful to construct, erect, paint, fasten, or affix any new advertising sign, whether billboard or painted wall graphic, on any zoning lot abutting or within the area bounded by East Grand Boulevard, the Detroit River, and West Grand Boulevard. This prohibition in no way limits the right to periodically alter the advertising display on billboards approved for "changeable copy" or to repaint the display on duly licensed painted wall graphics. No lawfully existing advertising sign within said area shall be enlarged or expanded, except upon approval of the Board of Zoning Appeals as provided for in Sec. 61-15-16 of this Code.

Critically, this provision expressly authorizes the BZA to approve an enlargement or expansion of lawfully existing signage, while *simultaneously* setting forth an absolute prohibition against new signage. The doctrine of *expressio unius est exclusio alterius* has long been recognized in this State: that "the expression of one thing suggests the exclusion of all others." *People v Wilson*, 500 Mich 521, 526; 902 NW2d 378 (2017); *Williams v Mayor, Etc., of Detroit*, 2 Mich 560, 563 (1853)[3]; *Pine Grove Twp v Talcott*, 86 US (19 Wall) 666, 674-675; 22 LEd 227 (1873). This provision clearly and narrowly strips the BZA of any power to grant use variances that would permit new signage within the Grand Boulevard Overlay Zone. Consequently, the BZA is explicitly precluded by § 61-6-65 from granting the use variance at issue.

In addition, the BZA is independently precluded by § 61-4-81 from granting the use variance at issue. As noted, the off-site advertising prohibition is one of only three special rules established for the Grand Boulevard Overlay Zone. This strongly suggests that the signage prohibition is of great importance to "the spirit, purpose, and intent" of the zoning ordinance. See Detroit Zoning Code § 61-4-81(1). Consequently, permitting an off-site advertising sign

---

[2] Two of the rules are irrelevant: one addresses lofts, and the other addresses certain driveways.

[3] In *Williams*, the Court cautioned that the doctrine may not be used to "do[] manifest violence to the plain intent of the framers of the law." *Williams*, 2 Mich at 563. Here, the Detroit Zoning Code, read as a whole, would be undermined if the doctrine is *not* applied.

would not merely be a grant of leeway for a technical violation. Rather, it would outright "permit the establishment, within a zoning district, of [a] use which is prohibited within the district." See Detroit Zoning Code § 61-4-81(8). Consequently, the use variance here could not possibly comport with all ten of the criteria mandated by § 61-4-81.

I respectfully believe the majority assembles the ordinance and the zoning enabling statute in the wrong order. Under MCL 125.3604(7), the power given to municipalities to grant use variances based on unnecessary hardships is *expressly restricted*, not absolute. The *statutory mandate* to observe "the spirit of the zoning ordinance" is mirrored by § 61-4-81(1). Because § 61-4-101 establishes that a hardship relief petition *is* the City's vehicle for granting use variances, § 61-4-81 *must* apply above and beyond merely finding a hardship. Otherwise, § 61-4-81, which establishes requirements for variances, would be nugatory, an outcome we must avoid. *People v Burns*, 5 Mich 114, 117 (1858); *State Farm Fire and Cas Ins Co v Old Republic Ins Co*, 466 Mich 142, 146; 644 NW2d 715 (2002). Simply put, the ordinance does not entitle a landowner to a use variance *only* on the basis of establishing an unnecessary hardship, nor does the statute. Because of the additional requirements imposed by the ordinance *and by the statute*, the BZA was not empowered to grant the use variance at issue here. Additionally, the majority notes that there may be "constitutional concerns" under the Fifth Amendment if the variance is not granted. Because the case actually before us is not a takings claim, nor a constitutional claim of any kind, I decline to consider what "constitutional concerns" are present.[4]

## IV. SELF-IMPOSED HARDSHIP

Case law has established a legal doctrine known as the "self-imposed hardship rule," which "applies to preclude relief in taking claims asserted by a property owner who has subdivided or physically altered the land so as to render it unfit for the uses for which it is zoned . . ." *Wolverine Commerce, LLC v Pittsfield Charter Twp*, 483 Mich 1023, 1024; 765 NW2d 343 (2009). The City contends that IO created its own hardship by purchasing property that IO knew could not be used for its intended purpose. Under the circumstances of this case, I agree.

Generally, "a plaintiff who purchases property with knowledge of existing zoning regulations takes the property along with the seller's legal right to challenge those regulations." *Wolverine*, 483 Mich at 1024, citing *Kropf v Sterling Hts*, 391 Mich 139, 152; 215 NW2d 179 (1974). However, *Kropf* only establishes that the constitutionality of an ordinance does not turn on a purchaser's knowledge of that ordinance. *Kropf*, 391 Mich at 152. This case does not involve a constitutional challenge. Consequently, IO's foreknowledge of the zoning ordinance, especially given IO's experience and sophistication, is certainly relevant. See *K&K Constr, Inc v*

---

[4] The majority notes that the parties do not dispute whether the billboard will alter the essential character of the locality. Whether or not that is true, a party "is entitled to the benefit of testimony in support of a verdict in [its] favor despite [its] expression of an opinion inconsistent therewith." *Ortega v Lenderink*, 382 Mich 218, 223; 169 NW2d 470 (1969). Furthermore, the courts are not bound by parties' stipulations to mistakes of law. *Magreta v Ambassador Steel Co*, 378 Mich 689, 705; 148 NW2d 767 (1967), rev'd on other grounds 380 Mich 513; 158 NW2d 473 (1968).

*Dep't of Environmental Quality*, 267 Mich App 523, 556; 705 NW2d 365 (2005). Indeed, our Supreme Court has indicated that a purchaser's foreknowledge of a zoning ordinance may be highly relevant, depending on whether the zoning ordinance is otherwise reasonable and the egregiousness of the purchaser's intended violation of that ordinance. Compare *Jones v DeVries*, 326 Mich 126, 137-139; 40 NW2d 317 (1949); and *Faucher v Gross Ile Twp Bldg Inspector*, 321 Mich 193, 199-200; 32 NW2d 440 (1948).[5]

As illustrated by the majority's overview of the development of the self-created hardship rule, its application has always been highly fact-specific. Our Supreme Court's opinion in *Wolverine* appears only to recite the kinds of cases to which the rule has historically applied, and it holds that a landowner who in good faith arranged for the zoning itself to be changed will not run afoul of the rule. None of those cases have involved a situation like the matter at bar: a highly sophisticated and experienced corporation that spent a pittance on a parcel of property it knew to be unusable, gambling on being able to generate a massive windfall by flouting an essential part of an entirely reasonable zoning ordinance. Any hardship suffered by IO, beyond owning a parcel of property that is worth its purchase price, is entirely IO's own creation.

I agree with the City that IO created its own hardship here. Therefore, IO was not entitled to receive its requested use variance.

## V. CONCLUSION

For all of the above reasons, the BZA was not empowered to grant the use variance permitting IO to install a billboard on the property, and IO was not entitled to any such use variance. I would reverse.

/s/ Amy Ronayne Krause

---

[5] I respectfully believe the majority misconstrues the intended significance of these cases. As the majority notes, in neither was the "self-imposed hardship rule" expressly discussed, and the purchasers' foreknowledge of the zoning ordinances proved not to be outcome determinative. Nonetheless, our Supreme Court stated that "[a]s bearing on whether [the purchasers] are in a 'plight' caused by restrictions in the zoning ordinance, *it is somewhat important to note* that [the purchasers] purchased their interest in this parcel . . . with full knowledge of this zoning ordinance which was previously adopted." *Jones*, 326 Mich at 138 (emphasis added). The word "important" signifies something more than a trivial side note, so I would find it "more than mere dicta." See *Carr v City of Lansing*, 259 Mich App 376, 383-384; 674 NW2d 168 (2003). In contrast, *Faucher* merely stands for the established proposition that foreknowledge of an ordinance does not preclude a challenge to its validity. See *Kropf,* 391 Mich at 152. As noted, IO has not brought a constitutional takings claim in the matter at bar.