# STATE OF MICHIGAN

# COURT OF APPEALS

---

MIRIAM HISER,

        Plaintiff-Appellant,

v

VILLAGE OF MACKINAW CITY and
MACKINAW CITY ZONING BOARD OF
APPEALS,

        Defendants-Appellees.

UNPUBLISHED
November 20, 2018

No. 338175
Emmet Circuit Court
LC No. 16-105218-AA

---

MIRIAM HISER,

        Plaintiff-Appellant,

v

EDWARD PAQUET, CATHY L. PAQUET, and
VILLAGE OF MACKINAW CITY,

        Defendants-Appellees.

No. 338843
Emmet Circuit Court
LC No. 15-105141-CH

---

Before: MURPHY, P.J., and SAWYER and SWARTZLE, JJ.

PER CURIAM.

These consolidated appeals concern the construction of a structure on a lot owned by defendants Edward and Cathy Paquet. In Docket No. 338175, plaintiff challenges the circuit court's ruling that affirmed a decision by the Mackinaw City Zoning Board of Appeals (ZBA) that found no errors regarding the approval of a permit and plans that paved the way for the construction. In Docket No. 338843, plaintiff, having also filed a separate civil action, argues that the circuit court erred in granting summary disposition in favor of the Paquets and defendant Village of Mackinaw City (the village). We conclude that the ZBA proceedings were riddled with inadequate and conclusory findings by the ZBA, which were mostly overlooked by the circuit court. And we thus reverse and remand in Docket No. 338175 for further proceedings in front of the ZBA. In Docket No. 338843, we affirm with respect to summary dismissal of two of the four counts in the complaint and reverse and remand on the remaining two counts.

-1-

## I. BROAD OVERVIEW

Plaintiff owns improved real property on the Straits of Mackinac, as do the Paquets. The Straits are situated to the north of their properties, and a roadway, Lakeside Drive, runs along the southern border of their lots. A strip of land lying directly adjacent to the east side of plaintiff's property separates plaintiff's parcel from the Paquets' land, with the strip of land being situated directly adjacent to the west side of the Paquets' property. This land sitting between the properties was conveyed to the village early last century by way of a deed, which provided, "Said property to be improved by [the village] and used as a street only."

With respect to zoning, the properties are located in a single-family residence district (R1 district). The Paquets' property has a one-story family residence, and they decided to construct a three-stall garage with full living quarters located above the garage as a second story of the structure (hereafter the "garage addition"). Under the plan, the garage addition was to be used by the Paquets as a temporary residence upon razing their existing house and while building a new larger two-story home at the site that would be attached to the garage addition. Preparation for the construction included cutting down trees, grading, and the addition of limestone on the village's property, as the village's land was to be used for purposes of ingress and egress relative to the garage addition and Lakeside Drive. Ultimately, the garage doors of the garage addition were to face the village's lot to the west, not Lakeside Drive, with the concrete driveway extending into the village's lot. The Paquets, after submission of permit applications and a site plan, successfully secured the necessary permits, and the construction of the garage addition was completed in the summer of 2015.[1] Numerous photographs of the garage addition and surrounding area are contained in the record.

Notwithstanding plaintiff's extensive efforts to quash the project, the ZBA ultimately approved of the village's actions in granting the building permit and allowing the construction, finding no violations of the Mackinaw Zoning Ordinance (MZO).[2] The circuit court affirmed the ZBA's decision. In a separate civil action brought by plaintiff against the Paquets and the village, the circuit court entered an order granting summary disposition in favor of defendants. The circuit court also denied plaintiff's request to amend her complaint. Plaintiff appeals the circuit court's decisions to affirm the ZBA's findings, to summarily dismiss plaintiff's complaint, and to deny amendment of the complaint.

## II. HISTORY, ANALYSIS, AND RESOLUTION

Plaintiff chartered three different courses in challenging the Paquets' construction project, which courses ran on a nearly parallel time-track. Plaintiff first challenged the zoning administrator's building permit that authorized the construction of the garage addition, filing an appeal with the ZBA, followed by an appeal of the ZBA's decision to the circuit court. And

---

[1] Due to the litigation, the Paquets' existing residence has not been demolished, nor has construction started on the planned new two-story home.

[2] We note that the village adopted a new ordinance on April 5, 2018, which entirely repealed and replaced the existing MZO. We shall, however, refer to the governing MZO in the present tense.

plaintiff now seeks reversal of the circuit court's decision in this Court. Second, in a direct circuit court appeal not entailing the ZBA, plaintiff challenged permits issued by the superintendent of the village's Department of Public Works (DPW) that authorized the construction of the driveway. Although the circuit court ruled against plaintiff and upheld the permits, plaintiff did not file an appeal in this Court relative to the circuit court's ruling. Finally, plaintiff filed an original action in the circuit court against the Paquets and the village, alleging a violation of the street-only language in the deed, the existence of a dedication, nuisance per se premised on violations of the MZO, and a separate nuisance count focused on property drainage issues. The circuit court summarily dismissed all of the counts in the complaint, and plaintiff challenges that ruling in this appeal. We shall now more closely examine the three avenues of relief that plaintiff pursued below, address the issues, engage in an analysis, and come to a resolution. We begin by reciting the standards of review and principles of ordinal construction.

## A. STANDARDS OF REVIEW AND THE CONSTRUCTION OF ORDINANCES

This Court reviews de novo a circuit court's decision in an appeal from a zoning board, *Edw C Levy Co v Marine City Zoning Bd of Appeals*, 293 Mich App 333, 340; 810 NW2d 621 (2011), the interpretation and application of municipal ordinances, *Great Lakes Society v Georgetown Charter Twp*, 281 Mich App 396, 407; 761 NW2d 371 (2008), questions involving the scope of deed restrictions, *Bloomfield Estates Improvement Ass'n, Inc v City of Birmingham*, 479 Mich 206, 212; 737 NW2d 670 (2007), and a trial court's decision on a motion for summary disposition, *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999).[3] MCL 125.3606(1) provides:

---

[3] In *Pioneer State Mut Ins Co v Dells*, 301 Mich App 368, 377; 836 NW2d 257 (2013), this Court discussed the parameters of MCR 2.116(C)(10), stating:

> In general, MCR 2.116(C)(10) provides for summary disposition when there is no genuine issue regarding any material fact and the moving party is entitled to judgment or partial judgment as a matter of law. A motion brought under MCR 2.116(C)(10) tests the factual support for a party's claim. A trial court may grant a motion for summary disposition under MCR 2.116(C)(10) if the pleadings, affidavits, and other documentary evidence, when viewed in a light most favorable to the nonmovant, show that there is no genuine issue with respect to any material fact. A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ. The trial court is not permitted to assess credibility, weigh the evidence, or resolve factual disputes, and if material evidence conflicts, it is not appropriate to grant a motion for summary disposition under MCR 2.116(C)(10). A court may only consider substantively admissible evidence actually proffered relative to a motion for summary disposition under MCR 2.116(C)(10). [Citations and quotation marks omitted.]

"Like the trial court's inquiry, when an appellate court reviews a motion for summary disposition, it makes all legitimate inferences in favor of the nonmoving party." *Skinner v Square D Co*, 445 Mich 153, 162; 516 NW2d 475 (1994).

Any party aggrieved by a decision of the zoning board of appeals may appeal to the circuit court for the county in which the property is located. The circuit court shall review the record and decision to ensure that the decision meets all of the following requirements:

> (a) Complies with the constitution and laws of the state.

> (b) Is based upon proper procedure.

> (c) Is supported by competent, material, and substantial evidence on the record.

> (d) Represents the reasonable exercise of discretion granted by law to the zoning board of appeals.

"The court may affirm, reverse, or modify the decision of the zoning board of appeals[,] [and] [t]he court may make other orders as justice requires." MCL 125.3606(4). "Substantial evidence is evidence that a reasonable person would accept as sufficient to support a conclusion." *Edw C Levy*, 293 Mich App at 340 (quotation marks omitted). It may be substantially less than a preponderance of the evidence, but requires more than a scintilla of evidence. *Id.* at 340-341.

In *Great Lakes Society*, 281 Mich App at 407-408, this Court observed:

> Ordinances are treated as statutes for the purposes of interpretation and review. Hence, the interpretation and application of a municipal ordinance presents a question of law, which this Court reviews de novo. The goal of statutory construction, and thus of construction and interpretation of an ordinance, is to discern and give effect to the intent of the legislative body. Terms used in an ordinance must be given their plain and ordinary meanings . . . . [Citations omitted.]

In general, "a reviewing court is to give deference to a municipality's interpretation of its own ordinance." *Macenas v Village of Michiana*, 433 Mich 380, 398; 446 NW2d 102 (1989). With respect to how much deference should be given, our Supreme Court explained that "in cases of ambiguity in a municipal zoning ordinance, where a construction has been applied over an extended period by the officer or agency charged with its administration, that construction should be accorded great weight in determining the meaning of the ordinance." *Id.* However, when the language of an ordinance is clear and unambiguous, it "must be enforced as written." *Kalinoff v Columbus Twp*, 214 Mich App 7, 11; 542 NW2d 276 (1995).

## B. CHALLENGE OF PERMITS AUTHORIZING CONSTRUCTION OF DRIVEWAY

On October 28, 2015, plaintiff filed an appeal in the circuit court, contesting permits issued by the village's DPW that authorized the construction of the Paquets' driveway. On January 26, 2016, the circuit court reversed the permits and remanded the matter to the village for the purposes of adding information to the record and further consideration of the village's right-of-way ordinance. The village supplemented the record on remand, and on September 21, 2016, after further briefing and oral arguments, the circuit court issued a written opinion and

order affirming the issuance of the permits that authorized the construction of the driveway. The court determined that the village established that the village's property "was never opened, used, or maintained for any public purpose" and that the property constituted a "public right-of-way." The circuit court rejected an argument that a pedestrian and traffic safety plan was necessary before the permit could be authorized, declaring that the DPW's superintendent had the discretion to find that no plan was necessary due to low traffic volume in the area. The court noted that an affidavit by the superintendent established that the proposed driveway would not conflict with the existing use of the village's property, that the driveway would not have any impact on the general public, and that the village's property was not designated, used, or maintained for any specific public purpose, thereby satisfying ordinance requirements.

The circuit court also acknowledged that the superintendent, in evaluating the application materials per the MZO, had recognized that other property owned by the village was used for private ingress and egress purposes, had considered the lack of sidewalks and low vehicle and pedestrian traffic, had reviewed elevation and topography maps to ensure that proposed drainage improvements would suffice, had reviewed plans and specifications submitted by the builders employed by the Paquets, had considered the potential for conflict with any existing uses of the village's property, and had contemplated the benefit or detriment to the public related to the proposed driveway. The superintendent averred that upon evaluation of these various ordinal factors, there was nothing problematic with the applications, and he issued the permits. And the circuit court concluded that there was nothing arbitrary or capricious about the decision by the DPW's superintendent to approve the permit applications. The court also ruled that issuance of the permits was not in violation of statute or ordinance and was upon lawful procedure. As indicated earlier, plaintiff has not appealed this appellate ruling made by the circuit court.

## C. CHALLENGE OF PERMIT AUTHORIZING CONSTRUCTION OF GARAGE ADDITION

On October 14, 2015, plaintiff appealed the decision of the village's zoning administrator to issue a permit that authorized the construction of the garage addition; the permit had been granted after the Paquets submitted a permit application and site plan. That appeal was filed with the ZBA, and a hearing was held in front of the ZBA on January 21, 2016, where the ZBA affirmed the issuance of the permit. Plaintiff appealed the ZBA's decision to the circuit court, which, by opinion dated September 2, 2016, reversed the decision because the ZBA's record on the matter was inadequate for judicial review. The case was remanded for an additional hearing and further findings by the ZBA. On remand, a hearing was conducted, minutes were produced, and a "record of decision" was issued by the ZBA, which again upheld the permit, finding in favor of the Paquets and the village. Plaintiff again appealed the ZBA's findings in the circuit court, and on March 8, 2017, the court affirmed the ZBA's approval of the permit.

In the appeal to the circuit court, plaintiff presented arguments that mostly mirror her arguments in the appeal to this Court. In the circuit court, plaintiff first maintained that the ZBA inconsistently and improperly treated the garage addition as an accessory building/garage for purposes of setback restrictions, but as a single family detached dwelling for purposes of height restrictions. Next, plaintiff argued that there was an MZO violation for either having two separate single family homes on the same lot, or for having a single family home with a second dwelling unit. Plaintiff additionally asserted that the building permit violated MZO, § 22-101, regarding the creation of parking areas and maneuvering lanes within a setback and the village's

parcel. Also, plaintiff maintained that the ZBA's decision that the village's property was not a street was unsupported by fact and law. Plaintiff further contended that because the village's property constituted a street, the building permit violated MZO, § 4-101, where it allowed structures on a public street.

Plaintiff next argued that the permit violated the 10-foot, side-yard setback and the 70-foot driveway setback, as applicable to corner lots. Moreover, plaintiff asserted that the building permit violated MZO, § 24-109(F), given that it was not based on plans that clearly and fully indicated the nature of the contemplated work. Plaintiff additionally argued that the building permit should have been revoked under MZO, § 24-109(F), where the garage addition, when fully completed, was significantly different than that allowed by the permit. Also, plaintiff contended that the permit violated MZO, § 4-110(F), which provides that a driveway must be designed and constructed so as not to adversely impact the drainage and the stability of the street or its sub-grade. This particular argument has not been renewed on appeal, perhaps because it appears to have been addressed in the unchallenged circuit court ruling regarding the DPW-related permits. On many of the above issues, along with arguing substantive error, plaintiff urged a conclusion that the ZBA failed to fully address the arguments presented and made unacceptable conclusory findings. Plaintiff also maintained that the ZBA erred in finding that the zoning administrator had reasonable discretion in issuing the building permit, as opposed to requiring the administrator to fully comply with the MZO. As part of our discussion and resolution of the arguments, we shall set forth the ZBA's finding and the circuit court's ruling on each particular matter.

## 1. HEIGHT AND FRONT-YARD SETBACK RESTRICTIONS

On this dizzying issue, we begin by noting that there is no dispute that the garage addition is in compliance with a ten-foot, front-yard setback but does not comply with a 25-foot, front-yard setback; the front-yard setback for the garage addition is ten feet. And there is no dispute that the garage addition is in compliance with a 35-foot height restriction but does not comply with a 21-foot height restriction; the garage addition has a height of 25 feet. The dispute involves, in part, questions regarding which MZO setback and height restrictions specifically apply to the garage addition, a unique building to say the least.

As indicated earlier, the Paquets' property is located in an R1 district, which allows for single-family detached dwellings having a maximum height of 35 feet, a front-yard setback of 25 feet, a side-yard setback of seven feet, and maximum lot coverage of 35%. MZO, § 5-101(A); MZO, § 5-103(A) to (C). Other permitted uses or structures in an R1 district include accessory buildings, which, in part, encompass garages. MZO, § 5-101(E)(1), (3), and (4). An "accessory building" is defined as a "subordinate building situated upon the same lot as the main building the use of which is incidental to the main building." MZO, § 2-102. A "private garage" is defined as "a building or other structure designed for the housing of automobiles and having capacity for not more than (4) automobiles." *Id.* A non-garage accessory building and a detached garage cannot be less than six feet from the main building. MZO, § 5-101(E)(4); MZO, § 5-103(E)(6). The maximum height for an accessory building or detached garage is 21 feet, with a front-yard setback of ten feet relative to waterfront or lakefront lots and a seven-foot setback for purposes of a side yard. MZO, § 5-103(E)(1), (2), and (4).

With respect to R1 districts, the MZO does not contain language that specifically refers to "attached" garages. MZO, § 5-101(E)(1), provides that, in regard to waterfront lots and "garages," a garage "shall be located not less than ten (10) feet from the front lot line." MZO, § 5-101(E)(3), also addresses "garages," but not within the context of waterfront lots. It provides that the maximum height for a garage is 21 feet, that a garage cannot be less than ten feet from any front or rear lot line, and that, if located on a corner lot, the garage cannot be less than ten feet from the side street lot line. MZO, § 5-101(E)(3). Defendants advanced the position that, except for the ten-foot, front-yard setback relative to waterfront lots, when a garage is attached to a house, the area, height, bulk, and placement requirements generally applicable to the house control, with the residence and attached garage being viewed as a single structure. MZO, § 5-103(A)(3) (35% maximum lot coverage), (B)(2) (35-foot height restriction), and (C)(2) (seven-foot, side-yard setback).

The ZBA, in its "record of decision," found that "[a]s a waterfront lot, Sections 5-101(E) and 5-103 of the zoning ordinance require a 10' setback from Lakeside Drive and a 7' setback from adjacent property lines." The ZBA additionally concurred with the zoning administrator that the garage addition is connected or attached to the existing residence. The ZBA next determined that, because the garage addition is attached to the house, "[t]he garage addition meets the height (maximum 35') and square footage requirements (no more than 35% of total lot) provided in Section 5-103 of the zoning ordinance." As reflected above, the ten-foot, front-yard setback for waterfront lots is found, in part, in MZO, § 5-101(E)(1), which is silent on side-yard setbacks and height limitations. It is set forth again in MZO, § 5-103(E)(4) (ten-foot, front-yard setback for accessory buildings and detached garages on lakefront lots), but given the ZBA's determination that the garage addition is attached to the Paquets' house, it is evident that the ZBA did not rely on MZO, § 5-103(E)(4), in finding that the garage addition was subject to a ten-foot, front-yard setback.[4] With respect to the referenced seven-foot, side-yard setback, such a setback is found in MZO, § 5-103(E)(2) (setback for accessory buildings and detached garages), which plainly was not relied upon by the ZBA in light of the attachment determination. However, a seven-foot, side-yard setback is also found in MZO, § 5-103(C)(2), which, again, applies to single-family dwellings in general.

Piecing together the ZBA's ruling, it appears that the ZBA relied on MZO, § 5-103(B)(2), in applying the 35-foot height restriction and on MZO, § 5-103(C)(2), in applying the seven-foot, side-yard setback, while disregarding the 25-foot, front-yard setback found in MZO, § 5-103(C)(1). All of these provisions concern area, height, bulk, and placement requirements for single-family dwellings; there is no specific mention of garages in MZO, § 5-103(A) to (D). Further, the ZBA apparently relied on MZO, § 5-101(E)(1), in applying the ten-foot, front-yard setback for waterfront lots.

The circuit court, in affirming the ZBA's findings and conclusions, stated that, as to the 21-foot height restriction in MZO, § 5-103(E)(1), it did not apply because the garage addition

---

[4] Part of the difficulty in determining the basis or rationale of the ZBA's findings is that the ZBA failed to cite specific subsections when discussing MZO, §§ 5-101(E) and 5-103, making appellate review especially frustrating.

was found to be attached to the Paquets' house and MZO, § 5-103(E)(1), applies only to detached garages. The circuit court then indicated that defendants had relied on MZO, § 5-101(E)(1), in applying the ten-foot, front-yard setback, which provision pertains to waterfront lots but is silent on height restrictions and side-yard setbacks. The court next entertained and rejected plaintiff's contention that if MZO, § 5-101(E)(1), applied for purposes of the front-yard setback, the general garage provision in MZO, § 5-101(E)(3), with its 21-foot height restriction, must also apply. The circuit court ruled:

> [Defendants] interpret their ordinance as allowing the 10 foot front setback for all garages (i.e. both attached and unattached) on waterfront lots per section 5-101(E)(1).[5] While the organization of the ordinance could suggest then that all garages on waterfront lots are limited to a height of 21 feet per section 5-101(E)(3), [defendants] view that limitation as being only applicable to detached garages. Since the Paquets' new garage is attached to the previously existing house, at 25 feet of height[,] it is within the 35 foot maximum height specified in section 22-101.[6] As noted above, the ordinance expressly vests the ZBA with the authority to interpret the provisions contained therein. This Court must give great deference to that interpretation.

> The interpretation by the ZBA in this regard is not arbitrary or unreasonable. Section 5-101(E)(1) authorizes a 10 foot front setback for garages, and does not differentiate between attached and unattached garages. Section 5-101(E)(3) likewise specifies a 21[-foot] height maximum for garages without differentiation, but Section 5-103(E) clearly indicates that the 21 foot maximum height specified therein applies to detached garages.

> Given this arguable ambiguity, it is not unreasonable for the ZBA to conclude, as it did, that an attached garage is subject to the 35 foot maximum height limit of the house to which it is attached, and also entitled to the 10 foot front setback specified for garages on lakefront lots. If a garage is attached to a house, which is allowed to be up to 35 feet in height, it is reasonable to permit the garage to be subject to the same height limit.

Under the circuit court's reasoning, it accepted the premise that there are two subsections of the MZO that address the requirements of detached garages, MZO, § 5-103(E), which specifically references "detached" garages, and MZO, § 5-101(E)(3), which simply references garages in general, both of which subsections contain a 21-foot height restriction and a ten-foot, front-yard and rear-yard setback, but with MZO, § 5-103(E), having additional requirements.

---

[5] We are placing parentheses around the subsections cited by the circuit court for purposes of consistency and clarity. We would also note that we have been placing parentheses around subsections even though the MZO itself does not utilize parentheses.

[6] MZO, § 22-101, merely summarizes the requirements of all of the various zoning districts, including the requirements of R1 districts as found in MZO, § 5-103(A) to (D).

-8-

The circuit court's analysis also reflected a conclusion that the 25-foot, front-yard setback in MZO, § 5-103(C)(1), did not apply because the attached garage is located on a lakefront lot.

With regard to whether the garage addition is attached or detached in relation to the Paquets' house, the ZBA determined that they are attached. The ZBA's resolution of arguments that there existed height and setback violations under the MZO was heavily predicated on its conclusion that the garage addition is attached to the house. In its record of decision, the ZBA stated that the zoning administrator had determined that the garage addition is connected to the house, and the ZBA, absent any explanation or reasoning, simply indicated in conclusory fashion that it concurred with the administrator's determination. Minutes of the ZBA's meeting addressing the various arguments posed by plaintiff provide no enlightenment on the matter, other than a conclusory agreement with the zoning administrator's finding. The circuit court failed to even address the question whether the garage addition and house are attached, simply noting that "[t]he ZBA found that the garage in question is attached to the existing home." The court apparently accepted the finding without pause.

The MZO does not appear to define what constitutes an "attached" garage or a "detached" garage. Cathy Paquet averred in her affidavit that the garage is attached to the existing house at the foundation, that it had been necessary to remove part of the house's roof to accommodate the garage addition, and that the house and garage addition are attached by trim. The zoning administrator averred in his affidavit that "[t]he zoning permit application the Paquets filed shows the proposed garage structure overlapping the principal structure [house]." He also averred that "the garage is connected to the foundation of the principal structure and the roof systems are connected as well." Plans show the two buildings overlapping.

However, as clearly depicted in photographs, there is no common roof, wall, or door as to the garage addition and the house, and one must step outside the house into the open air before entering the garage addition through its own door. The "roof systems" are not connected; rather, the roof of the house appears to touch a small stoop overhang above the door to the garage addition. Further, we question how the roof system of the one-story house could physically be connected to the roof system of the two-story garage addition. With respect to the foundation, this alone cannot mean that the garage addition is attached to the house, otherwise one could run a foundation 50 feet from a dwelling to another structure and call them attached. Moreover, the fact that the two buildings may be attached by trim seems purely superficial. Finally, the permit application or site plan that shows the structures overlapping would have little relevancy if the garage addition as actually constructed is not attached.[7]

---

[7] At oral argument, counsel for the Paquets contended that because detached garages must be at least six feet from the main building, MZO, § 5-103(E)(6), any garage less than six feet from a main building is necessarily an attached garage. We question the soundness of this argument. If a physically detached garage is less than six feet from a main building, it would seem to simply mean that there has been a violation of the MZO and not that the physically detached garage transforms into an attached garage. Regardless, nowhere in the record is it suggested that the ZBA based its attachment finding on the argument presented by counsel at oral argument.

Setting aside these concerns and observations, the greater problem is the ZBA's conclusory approach, failing entirely to state why it determined that the garage addition is attached to the house; no factual basis for the ZBA's conclusion was given. Moreover, the ZBA did not set forth any criteria upon which such a determination is to be made. On remand, the ZBA is to reexamine the issue of whether the buildings are attached or detached, enunciate criteria to be employed in assessing the issue, and to make particular factual findings in support of its ultimate decision, whatever that decision may be.

Moreover, if the ZBA again concludes that the garage addition is attached to the Paquets' house, and assuming that the ZBA then wishes to re-invoke its earlier findings regarding setbacks, height restrictions, and other matters that are dependent on whether the structures are attached, we direct the ZBA to expand its findings, so as to be conducive to appellate review.[8] As mentioned above, the ZBA did not provide citation to specific subsections in MZO, §§ 5-101(E) and 5-103, leaving us to speculate regarding the basis for its findings. The ZBA is directed to provide citation to specific subsections that support its findings. The ZBA is also directed to explain the basis for any determination that the 21-foot height requirement in MZO, § 5-101(E)(3), and the 25-foot, front-yard setback in MZO, § 5-103(C)(1), do not apply.[9] Furthermore, the ZBA needs to set forth the reasons why the garage addition, if attached, should be treated under the MZO "garage" provisions like any other normal garage that is attached to a house. The garage addition is not an ordinary garage; it is both a garage and a home.

The circuit court essentially took defendants' construction of the MZO and attributed it to the ZBA, as if the ZBA itself had announced and applied such a construction. While defendants' construction and application of the MZO may have equated to the ZBA's view of the issues, it certainly is not apparent or evident from the ZBA's minutes and record of decision. We also wish to make clear that even if the ZBA determines that the buildings are not attached, its corresponding and related findings must include specific citation to MZO subsections and enough detail to facilitate appellate review.

## 2. NUMBER OF HOMES OR DWELLING UNITS ON THE PROPERTY

In light of its conclusion that the garage addition is attached to the house, the ZBA, once again absent elaboration and in conclusory fashion, found that "[t]he garage addition does not constitute a separate or multi-family dwelling unit." The circuit court appears to have just accepted that finding without question. In light of our ruling above regarding whether the garage addition and house are attached, this issue will need to be reexamined.

---

[8] "If the court finds the record inadequate to make the review required by this section . . ., the court shall order further proceedings on conditions that the court considers proper." MCL 125.3606(2) (addressing ZBA appeals); MCR 7.216 (describing powers of this Court).

[9] It would also be beneficial if the ZBA explains the relationship and interplay, if any, between the requirements in MZO, § 5-101(E)(3) ("Garages"), and MZO, § 5-103(E) ("Detached Garages").

MZO, § 4-106(C), provides, in relevant part, that "[n]o single family detached residential structure shall be erected upon a lot with another single family detached residential structure." MZO, § 2-102, defines a "1-family dwelling" as "a detached building designed for or occupied exclusively by one (1) family."[10]   There is no dispute that the Paquets' existing house is a single-family detached residential structure.  With respect to the second story of the garage addition, it consists of a bathroom, bedroom, kitchen, living room, and utility room.

If the ZBA finds that the garage addition and the house are not attached, it is certainly arguable that two single-family detached residential structures exist on one lot in violation of MZO, § 4-106(C).  However, it is for the ZBA to decide that issue if in fact that issue needs to be reached.  Assuming that the ZBA finds that the structures are not attached, we cannot emphasize enough the need for the ZBA to make an adequate record that explains the basis for finding, one way or another, whether MZO, § 4-106(C), has been violated, as necessary to facilitate appellate review.

If the ZBA again finds that the garage addition and house are attached, it must more thoroughly address plaintiff's contention that the house contains a second dwelling unit in violation of MZO, § 5-101(A), which only allows "[s]ingle-family detached dwellings" in R1 districts.  A "2-family dwelling" is defined as "a detached building designed for or occupied exclusively by two (2) families, living independently of each other."  MZO, § 2-102.  If it becomes necessary to reach this issue, we direct the ZBA to make adequate findings, to provide a factual basis for its conclusions, and to specifically indicate the MZO provisions being relied upon to resolve the issue.

### 3.  PARKING AREAS AND MANEUVERING LANES WITHIN SETBACK AND VILLAGE'S PROPERTY

Plaintiff claims a violation of MZO, § 22-101, which provides, in relevant part, that "[p]arking areas, maneuvering lanes and driveways other than for immediate ingress and egress will not be permitted within a minimum yard setback except parking areas in the B2 District shall be permitted within 10 feet of the side yard setbacks."  Plaintiff, referencing photographs of the garage addition and the driveway area, argues the following in her appellate brief:

> The only evidence shows that the side setback is used routinely for parking. . . . The Paquets' property extends only seven feet west from the garage doors in these photos; the remaining eleven feet of paved driveway extending west is entirely in the [village's property]. Thus, the Paquets' property line ends approximately where the back wheels of the two vehicles in the first photo are located, and approximately where the front wheels of the blue car in the third photo are located. In each of these photos, most of [the] body of each parked vehicle is on the [village's property] itself, not on the Paquets' property. That is because the Village allowed the Paquets to build their driveway within the 7 foot

_____

[10] A "dwelling" is defined as "any house, building, structure, shelter, or portion thereof, which is designed for, or occupied exclusively as the home, residence, living or sleeping space of one or more human beings, either permanently or transiently."  MZO, § 2-102.

side setback (that is, the portion that is on the Paquets' own property and not into the [village's property]).

In the record of decision, the full extent of the ZBA's findings on this particular issue was as follows:

> The Zoning Administrator determined that the side setback area would only be used for immediate ingress and egress by the property owner, which is permissible under Section 22-101. No parking upon Village property was authorized by [the] permit[.]

The circuit court quoted much of the ZBA's record of decision, including the preceding passage, and after indicating that the zoning administrator had discretion in granting the permit and that the ZBA was to be given "great deference" as to its findings, the court concluded, without reference to evidence, that the record adequately supported the ZBA's findings.

Plaintiff maintains that there was no evidence in the record to support the ZBA's determination that the side-setback area would only be used for immediate ingress and egress. According to plaintiff, the evidence established the contrary, showing that the Paquets routinely park on the driveway within the seven-foot side setback. The record contains numerous photographs of motor vehicles parked in the driveway of the garage addition.[11]

To the extent that the permit could be viewed as allowing the Paquets to park within the side setback, i.e., on their driveway, as opposed to using the area only for purposes of "immediate ingress and egress," there would appear to be a conflict with MZO, § 22-101. The ZBA specifically noted that the permit did not authorize parking on the village's property, which is fine, but it does not address parking in the side-setback area, which is located *on the Paquets' property*. We remand the matter to the ZBA for further fact-finding and explanation, sufficient to facilitate appellate review, in regard to why parking in the driveway is or is not problematic under MZO, § 22-101, in relation to the permit. We recognize and appreciate that this issue may ultimately present a zoning enforcement issue and not one going to the validity of the permit. Only if the permit is construed as allowing or authorizing parking on the driveway must the ZBA engage in further examination.

### 4. ISSUES CONCERNING AND RELATED TO WHETHER THE VILLAGE'S PROPERTY IS A STREET

The ZBA found that the village's property located between plaintiff and the Paquets' lots was not a street because, at the time of the issuing permit, it did not meet the definition of a street under the MZO, it had never been designated or used as a street by the village, and because it was heavily wooded and unusable by motorized vehicles. The ZBA determined that because the village's property was not a street, the Paquets' property was not a corner lot; therefore, MZO

---

[11] Some photographs also show a vehicle parked on the village's property facing north at the backend of the area covered by limestone. At some point, the village placed a "no parking" sign at that spot.

corner-lot requirements did not apply and "[t]he issued permit did not authorize any permanent improvements within a public street right-of-way."

The circuit court quoted the ZBA's reasons for concluding that the village's property was not a street, and after indicating that the zoning administrator had discretion in granting the construction permit and that the ZBA is to be given "great deference" as to its findings, the court ruled that the record adequately supported the ZBA's findings. Again, the circuit court made no reference to any particular evidence in the record.

Plaintiff argues that the village's property is a street under MZO, § 2-102, because the Paquets use the village's land to access their property. MZO, § 2-102, defines a public "road or street" to be "[a]ny public right-of-way which provides vehicular access to adjacent properties." The ZBA agreed with the zoning administrator that the village's property did not fall within this definition. The ZBA, however, did not explain why the village's property did not meet the definition. The evidence in the record conclusively shows that part of the village's property is used for vehicular access to the Paquets' garage addition. We do agree with plaintiff that the question of whether the village's property is a street relative to evaluating the validity of the permit needs to be examined in light of the Paquets' planned use of the village's property when the permit application was submitted, which clearly envisioned the Paquets using the property to access their land by vehicle. To the extent that the ZBA made its finding on the street issue based solely on the status of the land as it existed before the construction and improvements without considering the planned use of the village's property, it erred.

Defendants argue that the definition of road/street in MZO, § 2-102, speaks of "vehicular access to adjacent *properties*." (Emphasis added.) And because the Paquets' property is the sole property that is accessed via the village's property, the definition does not support plaintiff's position. We question this construction of the road/street definition. Regardless, because of the inadequate and conclusory finding of the ZBA, we have no idea why the ZBA concluded that the definition was not satisfied. The record does not indicate that the ZBA's finding was premised on the fact that the road/street definition references the plural form of the word "property."

The ZBA also agreed with the zoning administrator that the village's property had never been used or designated as a street under the MZO and that the property was heavily wooded and unusable by motorized vehicles. This view again fails to consider the planned use of the village's property under the site plan and permit application. Plaintiff contends that there was evidence that the village's property which extends *south* of Lakeside Drive had historically provided vehicular access to various properties. We do not find this evidence particularly relevant, considering that the issue concerns the village's property to the *north* of Lakeside Drive down to the Straights of Mackinac. There was other evidence presented to the ZBA indicating that the village's property was referred to as the "fire road" or "fire lane" because the local fire department had used it to access Lake Michigan with its vehicles to extract water for fighting

-13-

fires. There was also evidence that the village's property was used for boat access. A photograph of the village's property pre-construction reveals a two-track down to the water.[12]

We conclude that the definition of road/street in MZO, § 2-102, ultimately governs the resolution of the issue whether the village's property is a street, in whole or in relevant part.[13] On remand, the ZBA is directed to address whether the planned and now actual use of the village's property renders it a road or street under the shared definition of those terms in MZO, § 2-102. We again require the ZBA to provide adequate fact-finding in conjunction with the relevant language in the MZO.

On the basis of plaintiff's position that the village's property is a street, in whole or in part, she argues that there was a violation of MZO, § 4-101, which provides, in pertinent part, that "[i]n no case shall any building, structure, sign or site, amenity (i.e. light poles, planter box, flag pole, site furniture, etc.) be allowed to be placed over, under, into or on any public street right-of-way within the corporate limits of the Village of Mackinaw City." Plaintiff complains that the Paquets' parking area and some of their landscaping are located on the street, thereby violating MZO, § 4-101. The ZBA determined that "[t]he issued permit did not authorize any permanent improvements within a public street right-of-way[,]" given that the village's property was not in fact a street. The circuit court perfunctorily affirmed the ZBA's conclusion based on, once again, the purported discretion that must be given to a zoning administrator and the deference to be given to the ZBA's findings. In light of our holding remanding the case to the ZBA to revisit the issue of whether the village's property is a street, this issue will need to be decided anew depending on the ZBA's findings. We do note that if the ZBA again concludes that the village's property is not a street, it would be proper for the ZBA to also find that the parking area and landscaping do not violate MZO, § 4-101.

With respect to another issue intertwined with the street question, plaintiff argues that there were multiple violations of various setback requirements applicable to corner lots, where the Paquets' property is a corner lot if the village's property is deemed a street. Because the ZBA found that the village's property was not a street, the ZBA concluded that the proper setback requirements were included in the permit and that corner-lot setback requirements were inapplicable. The circuit court affirmed the ZBA's decision absent elaboration. In light of our holding remanding the case to the ZBA to revisit the issue of whether the village's property is a street, this issue will need to be decided anew depending on the ZBA's findings. We do note that if the ZBA again concludes that the village's property is not a street, it would be proper for the ZBA to also find that corner-lot setback requirements do not apply.

---

[12] This would appear to contradict the zoning administrator's conclusion, which was adopted by the ZBA, that the village's property was heavily wooded and unusable by motorized vehicles, although that was clearly the case for part of the property.

[13] The question of whether the village's property is a street is not limited to a determination whether the *entire* parcel is a street, given the possibility that just a *portion* of the village's property is utilized as a street.

-14-

## 5. MZO, § 24-109(F)

Plaintiff next argues that the permit violated MZO, § 24-109(F), which she asserts provides that a permit must include plans that "clearly and fully indicate the nature of the contemplated work." We can find no such language in MZO, § 24-109(F). However, MZO, § 24-109(A), provides, in part, that "[t]he applicant for a permit must file with his request a set of plans and written specifications sufficient to clearly and fully indicate the nature of the contemplated work and the kind and quality of materials to be used therein, together with an estimate of the cost." We assume that plaintiff simply made a citation error, intending to reference MZO, § 24-109(A). On the basis of the language in the ordinance, plaintiff contends that a violation occurred because the plans submitted by the Paquets "had no description of [the] second story; stated an incorrect footprint and orientation; included no drawings showing construction; and included an admittedly inaccurate cost estimate[.]"

In the ZBA's record of decision, it stated that "the ZBA finds that the issuance of [the] Permit . . .: (1) did not serve to violate any provision of the zoning ordinance; (2) was done in accordance with proper procedure; and (3) was within the reasonable discretion of the Zoning Administrator as provided in Section 24-109 of the zoning ordinance." In its minutes, the ZBA acknowledged the issues raised by plaintiff concerning the alleged inadequacies of the Paquets' permit application and site plan. The ZBA then explained that the zoning administrator had discretion in determining whether a permit application met the requirements of MZO, § 24-109, and "that deviations from such requirements are within the reasonable discretion of the zoning administrator." Therefore, according to the ZBA, "it was reasonable for the zoning administrator to determine that the submitted application documents were adequate to be able to indicate the outcome of the completed project[.]"

MZO, § 24-109(C), provides that "[w]hen the plans submitted have been found to conform with the requirements of this Ordinance, the Village shall issue a permit." As indicated, MZO, § 24-109(A), *requires* that a permit application be accompanied by a "set of plans and written specifications sufficient to clearly and fully indicate the nature of the contemplated work and the kind and quality of materials to be used therein, together with an estimate of the cost." Assuming shortcomings in regard to the adequacy of the plans and specifications submitted by the Paquets as part of the application for the building permit, the fact remains that the garage addition has been built, so the only relevant question at this point in time is whether the garage addition, as built, is in compliance with the MZO, as discussed ad nauseam in this opinion. We are not prepared to issue a ruling which suggests that an ordinance-compliant structure can be razed because of a defect in the application materials for the underlying building permit. And plaintiff provides no authority that advances such a position.

In a closely related argument, plaintiff also maintains that MZO, § 24-109(F), required the revocation of the permit because the garage addition, in its final form, was significantly different than that shown in the written plans and specifications upon which the permit was issued. Plaintiff points to various alleged deviations between the plans and specifications and the existing garage addition. MZO, § 24-109(F), provides that "whenever it is found that work is not being performed in accordance with the application, plans and specifications on which the permit is based, the Village shall notify the person to whom the permit was issued to appear at a stated time and place and show cause why the permit shall not be revoked." Under MZO, § 24-109(F), if "work is being improperly done," the zoning administrator or community development

-15-

director "shall issue a written order revoking the permit." Here, the construction was not at a stage where work was being done when plaintiff raised her challenges; rather, the garage addition had already been built. Because a permit must be issued when plans that conform to the requirements of the MZO are submitted, see MZO, § 24-109(C), if a structure is ultimately built that is not consistent with the permit or the plans, but the structure as built is in full compliance with the MZO, such that a permit would have been mandated had plans been submitted that were consistent with the actual structure, any razing of the garage addition based simply on inconsistency between the plans and the finished garage addition would be improper.[14] Again, plaintiff has not directed us to authority to the contrary. Instead, the relevant question is whether the completed garage addition complies with the MZO.

## D. ORIGINAL ACTION IN CIRCUIT COURT

On December 2, 2015, plaintiff filed a four-count original action in the circuit court against the Paquets and the village.

### 1. THE VILLAGE'S PROPERTY AND STREET-ONLY LANGUAGE IN THE DEED OF CONVEYANCE

In Count I of the complaint, plaintiff alleged that the Paquets' improvements to and private use of the village's property violated the street-only language in the deed conveying the property to the village. Plaintiff requested that the circuit court order the Paquets to remove their improvements made upon the village's property and restore it to its original condition, or to declare that ownership of the property reverted back to plaintiff for violation of the deed restriction. This count was eventually summarily dismissed by the circuit court. The court first found that no extrinsic evidence had been presented regarding the intent of the deed's grantor. The court also observed that the deed did not contain a reversionary clause. The circuit court further found that no action had ever been taken to compel the village to improve the property and use it as a street; rather, without objection, "the strip has remained unused except as a foot path for over one hundred years." The court concluded that the deed's language merely constituted "a declaration of the purpose of the conveyance." And the court indicated that deed restrictions must be strictly construed, with "doubts resolved in favor of the free use of property." Finally, the circuit court noted that "use of the subject property for vehicular traffic as a driveway is not different from the use of a street for vehicular traffic."

The deed indicated that the village was to improve the property, with the property being used as a street only. The deed did not contain a reverter clause or express language that there was a right of reversion. We cannot conclude that the deed created a fee simple determinable, with its accompanying right of reversion, or a fee simple subject to a condition subsequent, with its accompanying right of entry. See 1 Cameron, *Michigan Real Property Law* (3d ed), Estates,

---

[14] To be clear, we are not indicating or suggesting that construction that is ongoing cannot be halted by a cease and desist order on revocation of a permit based on a deviation from the plans upon which the permit was issued.

7.9, pp 266-273.[15]  Moreover, if the deed did create either of these estates, there was no evidence, *specific as to time and nature*, that the village's property was improved and used as a street within 30 years of the conveyance in the early twentieth century.  Therefore, any right of reversion or entry would have terminated.  See MCL 554.62 ("If the specified contingency does not occur within 30 years after the terminable interest is created, the right of termination by reason of the specified contingency shall be unenforceable.").[16]

Additionally, in *Quinn v Pere Marquette R Co*, 256 Mich 143, 146, 151; 239 NW 376 (1931), our Supreme Court, addressing deed language which provided that the conveyed property was "for railroad purposes only," ruled as follows:

> The rule is that the debasing of a fee is not favored by the law, but provisions tending thereto are to be construed against the grantor.
>
> It seems to be the weight of authority that, where there is no reverter clause, *a statement of use is merely a declaration of the purpose of conveyance, without effect to limit the grant*. The reasoning is that, as a railroad company may take real estate only for railroad purposes, the declaration that it is to be so used is

---

[15] In *Ludington & Northern R v The Epworth Assembly*, 188 Mich App 25, 35-36; 468 NW2d 884 (1991), this Court explained:

> Traditionally, a "possibility of reverter" refers to the type of future interest remaining in a grantor where there has been created a fee simple determinable, whereas a "right of entry" refers to the interest remaining in the grantor where an estate on condition subsequent has been created. The distinction between the two interests is that in the former the estate reverts at once on the occurrence of the event by which it is limited, while in the latter the estate in fee does not terminate until entry by the person having the right.  [Citations omitted.]

[16] MCL 554.61 provides:

> As used in this act:
>
> (a) "Terminable interest" is a possessory or ownership interest in real property which is subject to termination by a provision in a conveyance or other instrument which either creates a right of reversion to a grantor or his heirs, successors or assigns or creates a right of entry on the occurrence of a specified contingency.
>
> (b) "Specified contingency" is the event described in a conveyance or other instrument creating a terminable interest, the occurrence of which requires or permits the divesting of the terminable interest.

merely an expression of the intention of the parties that the deed is for a lawful purpose. [Citations omitted; emphasis added.]

Because we have similar language in the instant case, we conclude that *Quinn* dictates that the village was free to use the property for purposes other than a street; the grant was not limited to use as a street only. Therefore, the Paquets and the village were not in violation of the deed, nor did ownership of the village's property revert to plaintiff, and she had no right of entry. Accordingly, the circuit court did not err in dismissing Count I.[17]

## 2. DEDICATION

Count II of plaintiff's complaint alleged that the deed effectively constituted a dedication of the property for use as a street and access to the lake. Plaintiff asserted that the Paquets' improvement and use of the property exceeded the scope of the dedication, interfering with and preventing the public use of the property to access the lake. The circuit court initially indicated that it would hold Count II in abeyance while it resolved the ZBA appeal because the issues overlapped, and it later summarily dismissed the count considering that the court ruled against plaintiff in the ZBA appeal. The problem with the court's ruling is that the dedication issue was never part of the ZBA appeal, nor did the court address any dedication argument in affirming the ZBA's decision. Thus, the dedication issue was never substantively considered by the circuit court, although the court did enter orders dismissing plaintiff's entire complaint. It is appropriate for the circuit court in the first instance to address and resolve the count. Accordingly, as part of the overall remand, we direct the circuit court to examine the issue whether the dedication claim should be dismissed.

## 3. PUBLIC NUISANCE PER SE – ALLEGED MZO VIOLATIONS

In Count III of the complaint, plaintiff alleged a public nuisance per se. This count asserted a number of violations of the MZO. First, plaintiff claimed that the concrete driveway, crushed limestone, and landscaping constituted "structures" that are not permissible in a public right-of-way. Next, plaintiff alleged that the Paquets' parcel is a corner lot; therefore, the location of the garage addition violates MZO setback requirements, and the location of the parking areas, maneuvering lanes, and driveway are improperly within a minimum setback area. Other alleged violations of the MZO included the driveway being too close to the intersection of Lakeside Drive and the village's property, the Paquets' property having two single-family dwellings at the same time, and the garage addition being more than 21 feet in height.

With respect to Count III, the circuit court eventually summarily dismissed it after initially holding the claim in abeyance pending its decision in the ZBA appeal. In ruling from

---

[17] We disagree with plaintiff's argument that the street-only language constituted a restrictive covenant in the deed subject to the law of contracts. Instead, the language was merely part of the words of conveyance, not rising to the level of a covenant. See *Briggs v Grand Rapids*, 261 Mich 11, 14; 245 NW 555 (1932) (language that land is for park purposes and language that land is to be used for railroad purposes only do "not . . . constitute an express covenant that the property may not be used for other purposes").

the bench, the circuit court found that it had decided all of the claims alleging violations of the MZO in favor of defendants in the ZBA appeal. Accordingly, it was summarily dismissing Count III of plaintiff's complaint because it raised the same alleged MZO violations.

In light of our ruling that remands the case back to the ZBA on the various alleged MZO violations, which also form the basis of plaintiff's claim of a public nuisance per se, the circuit court is directed to hold Count III in abeyance until there is a final resolution through the ZBA proceedings.

### 4. NUISANCE – DRAINAGE AND SNOWMELT RUNOFF

In Count IV of plaintiff's complaint, she alleged nuisance on the basis that the Paquets' driveway "will direct and drain surface water runoff and snowmelt onto [plaintiff's] property." The circuit court summarily dismissed this count, finding that the affidavits that were presented revealed that there was no genuine issue of material fact that the migration of rain and snowmelt was diverted to the lake and not plaintiff's property. Plaintiff does not appear to challenge the circuit court's ruling on appeal, so dismissal of this claim is affirmed.

### 5. AMENDMENT OF THE COMPLAINT

The circuit court denied plaintiff's request to amend her complaint, concluding that doing so would be futile. Plaintiff wished to amend the complaint in order to add a claim under Count III that a nuisance existed because the garage addition did not satisfy the 25-foot, front-yard setback, which issue was part of the ZBA appeal and which argument was rejected by the circuit court on appeal of the ZBA's decision. This is why the circuit court found that amendment would be futile. See MCR 2.116(I)(5) and MCR 2.118. Given our ruling remanding the case to the ZBA, which remand encompasses the 25-foot, front-yard setback issue, if that issue is ultimately resolved in favor of plaintiff, amendment of plaintiff's complaint to add the allegation as a basis for the nuisance count would be appropriate. MCR 2.118(A)(2) ("Leave shall be freely given when justice so requires.").

### III. CONCLUSION

In Docket No. 338175, we reverse the circuit court's ruling that affirmed the ZBA's decision and remand the case to the ZBA for further proceedings consistent with this opinion. We leave it to the ZBA's discretion whether to allow additional argument and evidence on the various MZO issues. In Docket No. 338843, we affirm the circuit court's dismissal of Counts I and IV of plaintiff's complaint, and we reverse and remand for further proceedings consistent with this opinion with respect to Counts II and III.

As a final thought in these appeals, and to hopefully prevent errors in the remand proceedings, we take a moment to address concerns on the topic of the discretion of the zoning administrator, which the ZBA and the circuit court appear to view as being more expansive than allowed. A zoning administrator certainly has some discretion in administering and enforcing a zoning ordinance, especially where an ordinance provision speaks in discretionary terms. A zoning administrator, however, does not have the discretion to ignore or deviate from the requirements of a zoning ordinance. Rather, a zoning administrator must act in accordance with the governing ordinance. MCL 125.3501 provides in part:

-19-

(1) The local unit of government may require the submission and approval of a site plan before authorization of a land use or activity regulated by a zoning ordinance. The zoning ordinance shall specify the body or official responsible for reviewing site plans and granting approval.

* * *

(3) The procedures and requirements for the submission and approval of site plans shall be specified in the zoning ordinance. . . . .

(4) A decision rejecting, approving, or conditionally approving a site plan *shall be based upon requirements and standards contained in the zoning ordinance . . . .*

(5) A site plan shall be approved if it contains the information required by the zoning ordinance and is in compliance with the conditions imposed under the zoning ordinance . . . . [Emphasis added.]

Also, once again, no deference is to be given to a ZBA's construction of its ordinance, if that construction is contrary to the plain and unambiguous language of the ordinance. *Kalinoff*, 214 Mich App at 11. And at the risk of being redundant, the ZBA must make findings sufficient to facilitate appellate review. See MCL 125.3606(2).

Affirmed in part and reversed and remanded in part for further proceedings. We do not retain jurisdiction. No party having fully prevailed on appeal, we decline to award taxable costs under MCR 7.219.

/s/ William B. Murphy
/s/ David H. Sawyer
/s/ Brock A. Swartzle